Keith MAYDAK, Appellant,

v.

UNITED STATES DEPARTMENT OF JUSTICE, Appellee.

No. 98–5492.

United States Court of Appeals, District of Columbia Circuit.

Argued May 3, 2000.

Decided July 18, 2000.

side of appellant. With him on the briefs was Deanne E. Maynard.

Daria J. Zane, Assistant United States Attorney, argued the cause for appellee. With her on the brief were Wilma A. Lewis, U.S. Attorney, and R. Craig Lawrence, Assistant U.S. Attorney.

Before: SILBERMAN, SENTELLE and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Keith Maydak seeks the release under the Freedom of Information Act ("FOIA") of copies of law enforcement records compiled by the U.S. Attorney's Office for the Western District of Pennsylvania in connection with his criminal prosecution for various offenses. The government originally denied Maydak's FOIA request by invoking FOIA Exemption 7(A), which permits the withholding of law enforcement records which if produced "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A) (1994). The district court granted summary judgment for the government on that basis, holding that it could withhold the documents. Having now abandoned its assertion of Exemption 7(A), however, the Department of Justice ("DOJ") seeks a remand of this case so that it might defend the applicability of other FOIA exemptions. Because the DOJ has failed to explain adequately why it could not have pleaded the other exemptions on which it wished to rely in the original district court proceedings, we deny the motion for remand, reverse the district court's judgment, and order the release of all requested documents to Maydak.

## I. Background

Maydak was convicted of wire fraud, mail fraud, access device fraud, and money laundering in the United States District Court for the Western District of Pennsyl-

Keith Maydak, appearing pro se, was on the brief for appellant.

David C. Belt, appointed by the court, argued the cause as amicus curiae on the

vania in 1994. He currently remains incarcerated for those crimes. On September 23, 1994, while his appeal from his criminal conviction was pending, Maydak filed with the United States Attorney's Office for the Western District of Pennsylvania a request under FOIA and the Privacy Act, 5 U.S.C. § 552a, for "copies of any and all documents which pertain to me, mention me, or list my name." On October 6, 1994, that request was forwarded to the Executive Office for United States Attorneys ("EOUSA").

On November 15, 1994, the EOUSA by letter denied Maydak's request in full, relying solely on FOIA Exemption 7(A). Exemption 7(A) exempts from FOIA disclosure requirements "records or information compiled for law enforcement purposes ... to the extent that the production of such law enforcement records or information ... could reasonably be expected to interfere with enforcement proceedings...." 5 U.S.C. § 552(b)(7)(A). The principal purpose of Exemption 7(A) is to prevent disclosures which might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses or fraudulent alibis or to destroy or alter evidence. *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 227, 241–42, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978); *see also* 37A Am. Jur.2d *Freedom of Information Acts* § 303 (1994). Another recognized goal of Exemption 7(A) is to prevent litigants from identifying and intimidating or harassing witnesses. *See Robbins Tire*, 437 U.S. at 239–40, 98 S.Ct. 2311. In its denial letter, the EOUSA stated that "portions of the information" contained in Maydak's file were "being considered in connection with" his pending appeal, and thus that the government was withholding all of the requested documents pursuant to Exemption 7(A). Maydak filed a timely appeal of the EOUSA's denial with the Department of Justice's Office of Information and Privacy ("OIP"). On August 8, 1995, the Third

Circuit affirmed Mayak's conviction and sentence. *See United States v. Maydak*, 66 F.3d 313 (3d Cir.1995) (table). On May 29, 1996, the OIP informed Maydak that it was remanding his FOIA request for reprocessing because the EOUSA had concluded that Exemption 7(A) no longer applied.

On August 23, 1996, Maydak filed in the Western District of Pennsylvania a motion pursuant to 28 U.S.C. § 2255 to vacate his sentence. Maydak had waived his right to counsel at sentencing. In his § 2255 motion, he claimed that the waiver was not voluntary, knowing and intelligent because the court had not first explained to him the consequences of proceeding *pro se*, and thus that he was entitled to a new sentencing. On September 11, 1996, the district court dismissed Maydak's § 2255 motion. In November 1996, Maydak filed a motion in the Third Circuit for a certificate of appealability to challenge that dismissal. On February 7, 1997, EOUSA again denied Maydak's FOIA request on Exemption 7(A) grounds because of the pending § 2255 motion. Maydak again filed a timely appeal with the OIP. On April 10, 1997, the Third Circuit denied Maydak's motion for a certificate of appealability. And on June 12, 1997, the OIP informed Maydak that it was again remanding his FOIA request for reprocessing because the EOUSA had concluded that Exemption 7(A) no longer applied.

In response to the OIP's July 1997 remand of his FOIA request, on August 13, 1997, Maydak filed a complaint in the United States District Court for the District of Columbia seeking an order requiring the government to provide the records and a list of all documents withheld. In proceedings before the district court, Maydak asserted that the documents he requested were not exempt from disclosure under FOIA Exemption 7(A). Because he had already been convicted, Maydak contended that there were no "enforcement proceedings" pending with which release

of the requested documents could interfere. The DOJ maintained that Exemption 7(A) continued to apply because the proceedings addressing Maydak's post-conviction motions (including but not limited to the August 23, 1996, § 2255 motion pending when his FOIA request was reprocessed) derived from and were part of the original law enforcement proceedings, and disclosure would interfere with the DOJ's ability to respond to those motions. The DOJ also argued that, should any of the motions result in the vacating of Maydak's conviction, disclosure of the requested documents could interfere with the government's ability to prosecute him again.

■ To support its argument that disclosure would interfere with those ongoing proceedings and to satisfy the government's burden of proof in denying a FOIA claim, the DOJ presented declarations from Paul E. Hull, the AUSA in the Western District of Pennsylvania who prosecuted Maydak, and from John F. Boseker, an attorney adviser in the EOUSA. The declarations grouped the requested records into categories and offered generic reasons for withholding the documents in each. It is well established that the government can satisfy its burden of proof under Exemption 7(A) by utilizing this format. *See, e.g., Robbins Tire,* 437 U.S. at 236, 98 S.Ct. 2311; *Bevis v. Department of State,* 801 F.2d 1386, 1390 (D.C.Cir.1986); *Crooker v. Bureau of Alcohol, Tobacco and Firearms,* 789 F.2d 64, 66–67 (D.C.Cir.1986).

While his FOIA case was pending, on September 18, 1997, Maydak filed in the Western District of Pennsylvania a motion for a new trial based on newly discovered evidence pursuant to Federal Rule of Criminal Procedure 33. On March 25, 1998, the district court denied the motion, and Maydak appealed. On May 27, 1999, the Third Circuit affirmed the district court's decision. *See United States v. Maydak,* 182 F.3d 904 (3d Cir.1999) (table). On September 16, 1999, Maydak filed a petition for a writ of certiorari in the United States Supreme Court, which petition was subsequently denied on November 29, 1999. *See Maydak v. United States,* —— U.S. ——, 120 S.Ct. 556, 145 L.Ed.2d 432 (1999).

Additionally, on October 22, 1997, Maydak filed in the Third Circuit a motion for leave to file another § 2255 petition, seeking to reassert the invalid waiver of counsel at sentencing issue. On November 17, 1997, the Third Circuit denied that motion as well, but stayed its denial pending disposition of another case. The Third Circuit finally disposed of Maydak's motion to file another § 2255 petition on January 11, 2000.

Returning to Maydak's FOIA claim, on September 1, 1998, the district court agreed with the DOJ that the release of the requested documents would interfere with enforcement proceedings in the event that Maydak's pending post-conviction motions and appeals succeeded. Accordingly, the court held that the government properly withheld the records under Exemption 7(A), and granted summary judgment in favor of the DOJ. Maydak appealed the district court's decision to this court. We appointed an *amicus curiae* ("Amicus") and certified two questions: (1) whether FOIA Exemption 7(A) continues to apply as long as a criminal defendant is pursuing a post-conviction collateral attack on the judgment or sentence entered in a criminal enforcement proceeding to which the withheld records relate; and (2) whether the DOJ, through its submissions below, met its burden of justifying its invocation of Exemption 7(A) to shield all the records it identified as falling within the various record categories, as well as the residual records not specifically categorized.

On June 18, 1999, the DOJ conceded partial error with respect to the second of these issues, allowing specifically that the statement in the Hull declaration that "[m]ost of the documents can be placed into one of the [listed] categories" was inadequate to meet the government's burden under Exemption 7(A) with respect to those documents which had not been cate-

gorized. The DOJ requested a remand to the district court so that it might present evidence to justify the withholding of the uncategorized documents.

Subsequently, the DOJ informed Maydak and Amicus on July 30 and August 2, 1999, respectively, that "[d]ue to the change in circumstances regarding a previously pending law enforcement matter in which [Maydak] was involved," the government was abandoning its assertion of Exemption 7(A) with respect to Maydak's FOIA request. On August 6, 1999, Amicus notified the DOJ that Maydak intended to appeal the Third Circuit's May 27, 1999, decision to the Supreme Court, and that his motion for leave to file a second § 2255 petition was still pending in the Third Circuit. Nevertheless, on August 26, 1999, the DOJ filed with this court a second motion for remand based on changed circumstances, confirming that it had abandoned its reliance on Exemption 7(A) and requesting the opportunity for the EOUSA to reprocess Maydak's FOIA request and determine whether other FOIA exemptions might apply.

On November 23, 1999, we dismissed as moot the government's original motion for remand to review and categorize the documents overlooked in the original proceedings and ordered briefing and oral argument on the DOJ's second motion for remand. A few days prior to oral argument, Amicus notified this court that the EOUSA had released some of the requested materials, but had invoked FOIA Exemptions 2, 3, 5, 7(C), 7(D), and 7(E), 5 U.S.C. § 552(b)(2), (b)(3), (b)(5), (b)(7)(C), (b)(7)(D), and (b)(7)(E) (1994), in withholding 1,524 pages of documents and redacting several of the released documents. Amicus also indicated that the EOUSA refused to release requested documents which originated from other agencies and which the EOUSA had "forwarded" back to them.

## II.  Analysis

▮ We turn now to the DOJ's motion for remand. The government bears the burden of proving the applicability of any statutory exemption it asserts in denying a FOIA request. We have plainly and repeatedly told the government that, as a general rule, it must assert all exemptions at the same time, in the original district court proceedings. *See Washington Post Co. v. United States Dep't of Health & Human Servs.*, 795 F.2d 205, 208 (D.C.Cir. 1986); *Ryan v. Department of Justice*, 617 F.2d 781, 789, 792 (D.C.Cir.1980); *Jordan v. United States Dep't of Justice*, 591 F.2d 753, 779–80 (D.C.Cir.1978) (en banc), *overruled on other grounds by Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1053 (D.C.Cir.1981) (en banc). FOIA was enacted to promote honesty and reduce waste in government by exposing an agency's performance of its statutory duties to public scrutiny. *See United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772–73 & n. 20, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Robbins Tire*, 437 U.S. at 242, 98 S.Ct. 2311. As we have observed in the past, the delay caused by permitting the government to raise its FOIA exemption claims one at a time interferes both with the statutory goals of "efficient, *prompt*, and full disclosure of information," *Senate of Puerto Rico v. United States Dep't of Justice*, 823 F.2d 574, 580 (D.C.Cir.1987) (quoting *Jordan*, 591 F.2d at 755), and with "interests of judicial finality and economy." *Id.* (quoting *Holy Spirit Ass'n v. CIA*, 636 F.2d 838, 846 (D.C.Cir. 1980)). Requiring the simultaneous invocation of exemptions also respects the general principle that appellate courts do not normally consider issues that were neither raised nor decided below. *See Ryan*, 617 F.2d at 789; *Jordan*, 591 F.2d at 779. We note that other circuits also require the government to assert all exemptions in the

original district court proceedings. *See, e.g., Crooker v. United States Parole Comm'n,* 760 F.2d 1, 2 (1st Cir.1985); *Fendler v. United States Parole Comm'n,* 774 F.2d 975, 978 (9th Cir.1985).

■ Although not its primary argument here, the DOJ suggests that it adequately raised other FOIA exemptions before the district court. Yet the DOJ acknowledges that it did not "formally" invoke other FOIA exemptions in the original district court proceedings. We have said explicitly in the past that merely stating that "for example" an exemption might apply is inadequate to raise a FOIA exemption. *See Ryan,* 617 F.2d at 792 n. 38a. Instead the government must assert the exemption in such a manner that the district court can rule on the issue. *See id.* Nevertheless, the DOJ maintains that references to other exemptions made in its motion for summary judgment and in the Hull and Boseker Declarations were adequate to preserve those issues.

A review of the record demonstrates that, while those filings all mentioned the potential applicability of other exemptions, the DOJ has to date made no attempt to substantiate those claims. Nor has the government even been consistent in specifying which other exemptions would apply. Ultimately, after reprocessing Maydak's FOIA request in the days immediately prior to oral argument, the EOUSA withheld requested documents pursuant to Exemptions 2, 3, 5, 7(C), 7(D), and 7(E). In its brief before us, however, the DOJ claimed the applicability of Exemptions 3, 5, 6, 7(C), and 7(D). Meanwhile, the DOJ's motion for summary judgment suggested only Exemptions 3, 5, and 7(D) as possibilities; the Hull Declaration offered that Exemptions 3, 4, 5, 6, 7(C), and 7(D) "may be applicable"; and the Boseker Declaration asserted conclusorily and without elaboration that all the requested records were subject to Exemptions 3, 4, 5, 6, 7(C), 7(D), 7(E), and 7(F). Neither declaration made any attempt to substantiate the applicability of other exemptions, and the DOJ has

never, at any time, offered further support for such claims. These cursory, equivocal, and inconsistent assertions are clearly inadequate to the task. The district court had nothing upon which to rule one way or the other with respect to the applicability of other FOIA exemptions. Accordingly, under the standard articulated in *Ryan,* the DOJ did not adequately assert other FOIA exemptions in the proceedings below.

Indeed, unlike in many of the cases it cites as supporting a remand—cases in which the DOJ merely fell short in its good faith attempts to carry its burden of proof with respect to other asserted exemptions, *see, e.g., North v. Walsh,* 881 F.2d 1088, 1100 (D.C.Cir.1989); *Bevis,* 801 F.2d at 1390—here the DOJ does not even claim that it tried to satisfy that burden. Instead, the DOJ maintains that it should not have to. The DOJ's primary argument before us is that the unique nature of its burden of proof under Exemption 7(A) relieves it of the burden of proving its case with respect to other exemptions it seeks to assert in the original district court proceedings. As noted above, under *Robbins Tire* and its progeny, the DOJ satisfies its burden of proof under Exemption 7(A) by grouping documents in categories and offering generic reasons for withholding the documents in each category. *See, e.g., Robbins Tire,* 437 U.S. at 236, 98 S.Ct. 2311; *Bevis,* 801 F.2d at 1390; *Crooker,* 789 F.2d at 66–67. The DOJ maintains that, if it has to assert other exemptions simultaneously with Exemption 7(A), that it will be forced to produce a *Vaughn* index, *see Vaughn v. Rosen,* 523 F.2d 1136 (D.C.Cir.1975), to satisfy its burden of proof with respect to the other exemptions. The DOJ contends that the mere act of producing a *Vaughn* index for the purpose of substantiating its invocation of another FOIA exemption will itself disclose the very information that the more generalized categorical showing required for Exemption 7(A) was designed to protect, and thereby undermine the very purposes of

Exemption 7(A). To avoid this result, the DOJ seeks a blanket rule that, if the government invokes Exemption 7(A) in the original district court proceedings, then the government does not have to claim the applicability of or satisfy its burden of proof with respect to any other exemption until such time as the government decides that Exemption 7(A) no longer applies or a court tells the government that Exemption 7(A) does not apply. In the DOJ's view, after the government or the courts conclude that Exemption 7(A) is inapplicable, then the government should be allowed to start back at the beginning in assessing the applicability of and satisfying its burden under other exemptions. We disagree.

First and foremost, the statute says nothing that would indicate that Exemption 7(A) is so unique. *See* 5 U.S.C. § 552(b). Instead, the statute merely lists several exceptions to FOIA's general policy of disclosure of all federal records not otherwise exempt. *See id.* Nothing in the statute, either express or implied, suggests that Exemption 7(A) should be singled out for preferential treatment by the courts. Exemption 7(A) is simply one exception on a list of many. Numerous cases exist in this and other circuits in which the government has asserted Exemption 7(A) and other exemptions at the same time, presumably without the dire consequences the DOJ alleges here. *See, e.g., Manna v. United States Dep't of Justice,* 51 F.3d 1158, 1162 & n. 4 (3d Cir.1995); *Mapother v. Department of Justice,* 3 F.3d 1533, 1536 (D.C.Cir.1993).

Moreover, despite the DOJ's concerns, the government does not necessarily have to produce a *Vaughn* index to justify denying a FOIA request under other exemptions, either. Specific holdings of this court and the Supreme Court permit the satisfaction of the government's burden of proof under many of the other exemptions claimed here through generic, categorical showings similar to that for Exemption 7(A). *See, e.g., United States Dep't of*

*Justice v. Landano,* 508 U.S. 165, 179–80, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993) (discussing circumstances in which the government can substantiate a claim of Exemption 7(D) generically); *Reporters Comm. for Freedom of the Press,* 489 U.S. at 777–80, 109 S.Ct. 1468 (holding that the *Robbins Tire* categorical approach to Exemption 7(A) is appropriate for Exemption 7(C), and citing *Federal Trade Comm'n v. Grolier Inc.,* 462 U.S. 19, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983), as establishing the same for Exemption 5); *Church of Scientology v. Internal Revenue Service,* 792 F.2d 146 (D.C.Cir.1986) (permitting the IRS to support its Exemption 3 claim generically with affidavits instead of a *Vaughn* index). Indeed, in *Church of Scientology,* we recognized that "when ... a claimed FOIA exemption consists of a generic exclusion, dependent upon the category of records rather than the subject matter which each individual record contains, resort to a *Vaughn* index is futile." *Church of Scientology,* 792 F.2d at 152. To that end, on other occasions, based upon the circumstances at hand, we have upheld the government's assertion of FOIA exemptions other than 7(A) based on something less than a *Vaughn* index. *See, e.g., Brinton v. Department of State,* 636 F.2d 600, 606 (D.C.Cir.1980) (upholding invocation of Exemption 5 on the basis of affidavits and no *Vaughn* index).

Given the posture of this case, we are in no position to decide whether affidavits alone would have sufficed to substantiate claims of other exemptions by the government here. Nevertheless, some of the categories identified by the Hull Declaration for purposes of Exemption 7(A) are of a nature which would lend themselves to generic and categorical justification under other exemptions. For example, the Hull Declaration identified among the requested documents "grand jury materials," which the DOJ could have claimed were also protected by FOIA Exemption 3 and Federal Rule of Criminal Procedure 6(e); and "attorney client/work product materi-

als," which the government could have asserted fell within FOIA Exemption 5. Yet before us the DOJ concedes that it did not even attempt to substantiate its claims with respect to these other exemptions. The DOJ's only justification for that failure was its insistence that such assertions would have required it absolutely to produce a *Vaughn* index, an excuse plainly contradicted by the above-mentioned precedents.

The DOJ may be correct that, in some cases, a *Vaughn* index could disclose too much and undermine these goals, particularly where trial or equivalent administrative hearing has not yet occurred. *See Solar Sources, Inc. v. United States,* 142 F.3d 1033, 1040 (7th Cir.1998) (recognizing this concern); *Curran v. Department of Justice,* 813 F.2d 473, 475 (1st Cir.1987) (same). In fact, the same could be said with respect to other exemptions as well. *See Hayden v. National Sec. Agency,* 608 F.2d 1381, 1384–85, 1390 (D.C.Cir.1979) (acknowledging similar objections with respect to substantiating withholding under Exemptions 1 and 3). And in FOIA cases, there is always the possibility that the district court may conclude that the affidavits offered are inadequate to satisfy the government's burden of proof. In such a case, the government can still request that the court deny a plaintiff's request for a *Vaughn* index in favor of more detailed affidavits, or that the court review the index or the requested documents *in camera,* on the grounds that the production and disclosure of a *Vaughn* index will in fact disclose the very information the government seeks to protect. In other words, the government has mechanisms by which it can accomplish the goal of protecting sensitive information while at the same time satisfying its burden of proof with respect to other exemptions in the original district court proceedings.

Despite the bulk of precedent contradicting its position, the DOJ contends that our opinion in *Senate of Puerto Rico,* 823 F.2d at 580–81, supports its characteriza-

tion of Exemption 7(A) as meriting unique treatment. In *Senate of Puerto Rico,* while the district court was in the process of considering motions for summary judgment with respect to Exemption 7(A), the relevant criminal trials ended with guilty verdicts. The DOJ by affidavit acknowledged that Exemption 7(A) no longer applied, and the district court said that the agency could present evidence to demonstrate that the requested documents were properly withheld under other exemptions. Upon review, after discussing at length the competing public policy concerns, we concluded only that the district court did not abuse its discretion in its handling of the case. *See id.* We can find nothing in *Senate of Puerto Rico* that should be construed as supporting the proposition that, when the government withdraws its reliance on Exemption 7(A) after the district court has reached a final decision and an appeal has been filed, the appropriate course of action is necessarily remand to the agency for reprocessing of the FOIA request in question. Accordingly, we conclude not only that the DOJ did not genuinely assert exemptions other than Exemption 7(A) in the court below, but also that it had no legitimate excuse for its failure to do so.

We have recognized two exceptions for unusual situations, largely beyond the government's control: specifically, extraordinary circumstances where, from pure human error, the government failed to invoke the correct exemption and will have to release information compromising national security or sensitive, personal, private information unless the court allows it to make an untimely exemption claim; and where a substantial change in the factual context of the case or an interim development in the applicable law forces the government to invoke an exemption after the original district court proceedings have concluded. *See id.* (relying on *Jordan,* 591 F.2d at 780). As to the first of these, the DOJ does not claim that human error was the cause of its failure to assert other

FOIA exemptions; and as to the second, the only change in this case is the simple resolution of other litigation, hardly an unforeseeable difference.

The DOJ contends that the existence of at least the first round of Maydak's collateral attacks made the possibility of a new trial sufficient to justify the continued application of Exemption 7(A). Although Maydak still has collateral attacks pending just like those that existed at the time the EOUSA reprocessed his FOIA request, the DOJ suggests that the Third Circuit's May 27, 1999, decision regarding Maydak's motion for a new trial rendered sufficiently *de minimis* the likelihood that further collateral attacks might succeed, and thereby reduced the potential for future enforcement proceedings, so that the government could no longer justify withholding under Exemption 7(A). In other words, according to the DOJ, the Third Circuit's May 27, 1999, order affirming the district court's decision to dismiss Maydak's motion for a new trial represents a substantial change in circumstances, both factual and legal, governing Maydak's FOIA request. The DOJ offers no analysis, however, as to why that particular decision crossed any such threshold. Moreover, the DOJ's argument about the decreasing likelihood that Maydak's attacks on his conviction will succeed is inconsistent with the concern, expressed both in its brief and at oral argument, that Maydak will use the requested records, once released, to craft new and improved challenges against his conviction and sentence. The law of the case created by the Third Circuit's denial of Maydak's motion for new trial expressing one legal theory would not preclude that court from granting a motion for new trial based on a different legal theory derived from the requested documents. Accordingly, we hold that there has been no substantial change in the factual or legal context of this case, and thus that there is no reason for us to deviate from our usual rule of requiring the government to assert all its FOIA exemption claims in the original district court proceedings.

■ In a final effort to obtain a remand, the DOJ argues that public policy concerns about disclosing information that might otherwise be exempt require this court to exercise its discretion under 28 U.S.C. § 2106 to remand the case for further consideration of the applicability of other FOIA exemptions. That provision provides that "[any] court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment ... and may remand the cause ... as may be just under the circumstances." 28 U.S.C. § 2106 (1994). We remand pursuant to 28 U.S.C. § 2106 when doing so best serves such interests as judicial finality and economy and avoiding just the sort of delay that is inappropriate in FOIA cases, *see, e.g., Trans–Pacific Policing Agreement v. United States Customs Serv.,* 177 F.3d 1022, 1028 (D.C.Cir.1999), or basic justice and fairness. *See Powell v. United States Bureau of Prisons,* 927 F.2d 1239, 1243 (D.C.Cir.1991).

Our precedents applying 28 U.S.C. § 2106 do not support the DOJ's argument. In *Trans–Pacific,* for example, after concluding that the district court had an affirmative duty to consider *sua sponte* whether the agency could have segregated the exempt portions of the requested records despite the plaintiff's failure to expressly suggest such action, we remanded the case because, otherwise, the plaintiffs could merely file another, more specific FOIA request, which would merely result in a new lawsuit, wasting time, expense, and judicial resources. *See Trans–Pacific,* 177 F.3d at 1023, 1027–29. In the present case, the DOJ does not allege that the district court failed to consider an issue that it properly should have; moreover, the waste in time, expense, and judicial resources is more likely to occur if we grant the remand that the DOJ seeks than if we deny it.

Similarly, in *Powell,* this court considered the situation of a *pro se* prisoner

plaintiff appealing the district court's conclusion that an internal agency manual was wholly exempt and not segregable under FOIA Exemption 2. The court appointed an *amicus curiae* to represent the plaintiff on appeal, and the *amicus* located an unpublished opinion in another FOIA case which demonstrated that portions of the manual had already been released. This court exercised its discretion to grant a remand as serving "the interests of justice and fairness" and the purposes of FOIA on the grounds that the unpublished opinion was directly relevant to the plaintiff's claim that the manual was segregable, yet was unavailable to him at the time of the district court proceedings. *Powell,* 927 F.2d at 1243. The equities of the present case are not comparable. The DOJ was not demonstrably unable to prove its assertion of other FOIA exemptions; it simply chose not to try.

The DOJ again raises *Senate of Puerto Rico* as an example of this court exercising its discretion under 28 U.S.C. § 2106 to allow the government to invoke other FOIA exemptions after Exemption 7(A) was deemed no longer to apply. Contrary to the DOJ's argument, however, in that case, we explicitly left open the applicability of 28 U.S.C. § 2106 in a case such as this one. *See Senate of Puerto Rico,* 823 F.2d at 581. Moreover, we explicitly said that "[w]e will not allow an agency 'to play cat and mouse by withholding its most powerful cannon until after the District Court has decided the case and then springing it on surprised opponents and the judge.'" *Id.* at 580 (quoting *Grumman Aircraft Eng'g Corp. v. Renegotiation Bd.,* 482 F.2d 710, 722 (D.C.Cir.1973), in which this court upheld an agency's motion for rehearing in which it raised for the first time a claim of executive privilege).

The DOJ's expressed concerns about public policy are so general as to apply in virtually all situations in which the DOJ declined for whatever reason to raise one or more FOIA exemptions the first time around. The record before us offers no more direct evidence of the applicability of other exemptions than the general and conclusory assertions of the Hull and Boseker Declarations. There is simply nothing in the record to substantiate the DOJ's claims that dire consequences will flow from the release of the requested documents. Furthermore, the DOJ's repeated statements that other specified FOIA exemptions might apply, coupled with its abject failure even to try to substantiate those assertions generically through affidavits, strongly suggests the sort of tactical maneuvering at a plaintiff's expense that we have explicitly rejected. If anything, the notions of judicial finality and economy, avoiding delay, and fairness prominent in our § 2106 jurisprudence dictate an order in Maydak's favor. Accordingly, we decline to exercise our discretion under that provision to remand the case for further proceedings.

### Conclusion

Because the DOJ failed to raise the other exemptions upon which it wished to rely in the original district court proceedings, and because the DOJ has offered no convincing reason why it could not have done so, we deny the government's motion for remand, reverse the district court's judgment, and order the release of all requested documents to the appellant.

*So ordered.*