Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

#### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 14, 2003          Decided May 20, 2003

No. 98-5340

GREGORY EUGENE AUGUST,
APPELLANT

v.

FEDERAL BUREAU OF INVESTIGATION AND
DEPARTMENT OF JUSTICE,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 97cv00769)

*Andrew W. Bagley,* appointed by the court, argued the cause as *amicus curiae* for appellant. With him on the briefs was *J. Michael Klise.*

*Gregory E. August* filed a pro se brief.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*John S. Koppel*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, *Leonard Schaitman*, Attorney, U.S. Department of Justice, and *R. Craig Lawrence*, Assistant U.S. Attorney. *Kathleen M. Frye* and *Robin M. Earnest*, Assistant U.S. Attorneys, entered appearances.

Before: EDWARDS, RANDOLPH and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Responding to a federal prisoner's Freedom of Information Act request for his investigative file, the Federal Bureau of Investigation withheld the bulk of the requested materials pursuant to FOIA Exemption 7(A), which exempts from disclosure any records that could reasonably be expected to interfere with ongoing law-enforcement proceedings. After the district court granted summary judgment in favor of the Government and while that ruling was pending on appeal, however, the law-enforcement proceedings against the prisoner ended, thus undermining the Government's reliance on Exemption 7(A). Citing this court's decision in *Maydak v. Department of Justice*, 218 F.3d 760 (D.C. Cir. 2000), which held that the Government generally waives any FOIA exemption it fails to raise at the initial proceedings before the district court, the FOIA requester here seeks wholesale disclosure of his criminal file on the ground that the Government waived its right to invoke any exemptions other than 7(A). But because the Government has provided clear evidence that wholesale disclosure would jeopardize the safety and privacy of third parties involved in the FBI's investigation, and because we believe the Government's failure to invoke all applicable exemptions in the original district court proceedings was the result of a reasonable mistake, rather than an attempt to gain a tactical advantage over the FOIA requester, we remand to allow the Government to demonstrate the applicability of other FOIA exemptions to withhold third parties' names and other identifying information.

I.

After receiving an eight-year sentence for financial fraud, Appellant Gregory E. August sent the Federal Bureau of Investigation a pro se request pursuant to the Freedom of Information Act, 5 U.S.C. § 552 *et seq.*, seeking all Bureau records pertaining to him. Although the FBI released some public-source material after redacting names and telephone numbers of Bureau personnel, it withheld the bulk of the information August requested under FOIA Exemption 7(A), which permits the government to withhold "records or information compiled for law enforcement purposes . . . to the extent that production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

August brought suit in the United States District Court for the District of Columbia to compel disclosure of the materials the FBI withheld. The district court granted summary judgment in favor of the Government. On appeal, this court remanded, directing the FBI to provide a more specific explanation of its nondisclosure of materials pursuant to Exemption 7(A). *August v. FBI*, No. 98–5340 (D.C. Cir. March 2, 1999) (unpublished order). By the time the case returned to the district court on remand, however, August's conviction had been affirmed. Because there were no longer any ongoing law-enforcement proceedings, the Government abandoned its reliance on Exemption 7(A) and requested a stay to allow it to process all documents pursuant to other FOIA exemptions. Finding that it lacked jurisdiction to grant the relief the Government requested, the district court denied the stay motion and ordered the record returned to this court.

At that point, the case was held in abeyance pending a decision in *Maydak*, which also presented the question of whether to permit the Government to raise additional FOIA exemptions after its initial reliance on Exemption 7(A) was undermined by the conclusion of law-enforcement proceedings. In our decision in that case, we denied the Government the opportunity to raise additional FOIA exemptions and

ordered wholesale disclosure of the requested materials. 218 F.3d 760. Applying *Maydak* to August's pending appeal, this court vacated the grant of summary judgment on Exemption 7(A) and directed the Government to release the withheld materials. *August v. FBI*, No. 98–5340, 2002 WL 335534 (D.C. Cir. Jan. 23, 2002) (per curiam order).

The Government filed a petition for panel rehearing, requesting permission to redact material covered by other law-enforcement exemptions. The Government attached to its petition the in camera declaration of FBI Special Agent Randy L. Durney to establish the applicability of FOIA Exemptions 7(C), 7(D), and 7(F), which allow the Government to withhold information that "could reasonably be expected to constitute an unwarranted invasion of personal privacy," "to disclose the identity of a confidential source," or "to endanger the life or physical safety of any individual," respectively. 5 U.S.C. § 552(b)(7)(C), (D), (F). In his declaration, Durney explains that the records August requested include names of confidential sources, as well as the dates of birth, social security numbers, and home addresses of persons interviewed in the course of the investigation and of others who testified for the Government at trial. Durney states that because August has a history of violent behavior, release of the information would pose a risk to these persons' safety and privacy. Agreeing to rehear the case, we vacated our earlier order and appointed an amicus curiae to present arguments in support of August's position. *August v. FBI*, No. 98–5340, 2002 WL 31010076 (D.C. Cir. Aug. 5, 2002) (per curiam order).

## II.

Two powerful, competing interests are at stake in this case. The first is the interest in judicial finality and economy, which has "special force in the FOIA context, because the statutory goals—efficient, *prompt*, and full disclosure of information—can be frustrated by agency actions that operate to delay the ultimate resolution of the disclosure request." *Senate of the Commonwealth of Puerto Rico v. United States Dep't of*

*Justice*, 823 F.2d 574, 580 (D.C. Cir. 1987) (internal quotation marks and citations omitted) (emphasis in original). Particularly wary of agency attempts "to play cat and mouse by withholding its most powerful cannon until after the District Court has decided the case and then springing it on surprised opponents and the judge," *id.* (internal quotation marks and citation omitted), we have "plainly and repeatedly told the government that, as a general rule, it must assert all exemptions at the same time, in the original district court proceedings," *Maydak*, 218 F.3d at 764–65.

But although FOIA strongly favors prompt disclosure, its nine enumerated exemptions are designed to protect those "legitimate governmental and private interests" that might be "harmed by release of certain types of information." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (internal quotation marks omitted). Given the drafters' recognition that the harms of disclosure may in some cases outweigh its benefits, we have avoided adopting a "rigid 'press it at the threshold, or lose it for all times' approach to . . . agenc[ies'] FOIA exemption claims." *Senate of Puerto Rico*, 823 F.2d at 581. Instead, we have repeatedly acknowledged that there are some "extraordinary" circumstances in which courts of appeals may exercise their authority under 28 U.S.C. § 2106 to require "such further proceedings to be had as may be just under the circumstances," in order to allow the government to raise FOIA exemption claims it failed to raise the first time around. *Maydak*, 218 F.3d at 767.

In *Jordan v. United States Department of Justice*, 591 F.2d 753 (D.C. Cir. 1978), we outlined the considerations courts should take into account in deciding whether to exercise their section 2106 discretion to allow the Government to raise belated FOIA exemption claims. As we observed in that case, "there are at least three situations in which an agency might be led to invoke an exemption on appeal for the first time." *Id.* at 780. One of those situations is where the Government deliberately withholds some of its FOIA claims "to gain a tactical advantage over the requestor," a motive undoubtedly inconsistent with FOIA's "broad remedial purpose" and which counsels denying the Government's request

for remand. *Id.* That said, we also acknowledged that the exercise of section 2106 discretion might be appropriate where the agency's motives for belatedly invoking FOIA exemptions are less sinister, such as where an agency is "forced to invoke an exemption for the first time on appeal because of a substantial change in the factual context of the case or because of an interim development in applicable legal doctrine." *Id.* We also recognized that "there could be circumstances where, through pure mistake, the Government attorneys had not invoked the correct exemption in the district court." *Id.* In this latter situation, we stated that

> [i]f the value of the material which otherwise would be subject to disclosure were obviously high, [e].g., confidential information compromising the nation's foreign relations or national security, and it appeared highly likely was intended to be protected by one of the nine enumerated exemptions, then under 28 U.S.C. § 2106, the appellate court would have discretion to "remand the cause and require such further proceedings to be had as may be just under the circumstances."

*Id.*; *accord Ryan v. Dep't of Justice*, 617 F.2d 781, 792 (D.C. Cir. 1980) (recognizing exception to general waiver rule where "sensitive, personal private information might be revealed"); *Wash. Post v. Dep't of Health & Human Servs.*, 795 F.2d 205, 208 (D.C. Cir. 1986).

Although *Maydak* affirmed *Jordan*'s flexible approach to handling belated invocations of FOIA exemptions, 218 F.3d at 767, it ultimately determined that none of the circumstances *Jordan* recognized as counseling remand was present: The "simple resolution of other litigation" is not the type of "interim development" that excuses the Government's failure to assert FOIA exemptions other than 7(A), and the Government neither argued that that failure resulted from human error nor offered evidence to substantiate the applicability of other FOIA exemptions, *id.* at 768–69. *Maydak* concluded that the Government's failure to make an evidentiary showing about the "dire consequences" that would "flow from the release of the requested documents . . . strongly suggests the

sort of tactical maneuvering at a plaintiff's expense that we have explicitly rejected." *Id.* at 769.

This case differs from *Maydak* in several important respects. First, and most important, the Government seeks only the opportunity to withhold "sensitive, personal private information" pertaining to third parties involved in its investigation of August, and it has provided clear evidence that wholesale disclosure of the requested information would endanger such persons. According to the Durney Declaration, August's file includes the names and other identifying information pertaining to confidential sources and other persons who provided information in the course of the investigation. Disclosure of this information, Durney declares, "could reasonably be expected to endanger the life or safety" of such persons, *see* 5 U.S.C. § 552(b)(7)(F), and "could reasonably be expected to constitute an unwarranted invasion of personal privacy," *see id.* § 552(b)(7)(C), since release of such information would expose them to the risk of physical harm, harassment, and identity theft. Durney Decl. ¶ ¶ 25–34.

Second, the Government has admitted that it made a mistake in failing to invoke FOIA Exemptions 7(C), 7(D), and 7(F) in the district court, acknowledging that it "did not fulfill its responsibility under FOIA in a timely fashion." Appellees' Br. at 12–13. The Government's behavior in this case, moreover, is far more consistent with simple human error than with the kind of tactical maneuvering we disapproved in *Maydak*. To begin with, at the time this litigation commenced, *Maydak* had not yet been decided, and under then-governing law, the Government might quite plausibly have believed that it could rely solely on Exemption 7(A) without reviewing its voluminous investigative file on August to determine whether other exemptions might apply. *See Senate of Puerto Rico*, 823 F.2d at 581 (holding that the district court did not abuse its discretion in permitting the Government to invoke other FOIA exemptions after its initial reliance on 7(A) "collapse[d]," and leaving open the question of whether the conclusion of law-enforcement proceedings constitutes a "substantial change in the factual context of the case" sufficient to invoke an appellate court's section 2106 discretion to remand). Indeed, *Maydak* was not decided until well after

the district court granted summary judgment in favor of the Government on its Exemption 7(A) claim and this court issued its order in August's first appeal. In light of the substantiation of the important third-party interests at stake, it seems quite likely that the Government's failure to invoke Exemptions 7(C), 7(D), and 7(F) was not an effort to gain a tactical advantage, as August argues, but rather stemmed from its ultimately mistaken but reasonable belief that it would have an opportunity to raise these exemptions if the law-enforcement proceedings against August ended before his FOIA case.

Nothing in *Maydak* requires that we order disclosure solely to deter the Government from playing "cat and mouse games" where, as here, not only did the Government's behavior result from a mistake, but doing so would endanger the safety and privacy of third parties—who, after all, bear no responsibility for the Government's litigation strategy. The law does not require that third parties pay for the Government's mistakes. *Cf. Sherman v. United States Dep't of the Army*, 244 F.3d 357, 364 (5th Cir. 2001) (holding that the Government cannot waive FOIA Exemption 6 on behalf of the individual whose privacy interests the exemption protects); *Computer Prof'ls for Soc. Responsibility v. United States Secret Serv.*, 72 F.3d 897, 903–04 (D.C. Cir. 1996) (holding that the district court erred in refusing to grant the Secret Service's Fed. R. Civ. P. 60(b) motion to rehear arguments about the applicability of FOIA Exemptions 7(C) and 7(D) in light of the Secret Service's belatedly proffered proof of a promise of confidentiality, noting that the case was "not the ordinary one," since "it involves not only the interests of the Secret Service, but that of a third party whose identity and information are expressly protected by FOIA"); *Schanen v. United States Dep't of Justice*, 798 F.2d 348, 349 (9th Cir. 1986) (reversing the denial of the Government's Rule 60(b) motion to allow it to make a belated response to a FOIA request on the ground that "[r]elease of the documents would endanger the lives and well-being of agents and informants").

Finally, remand is particularly appropriate in this case because "the government has taken affirmative steps to abide by *Maydak*, to guard against recurrence of this problem."

Appellees' Br. at 24. Reiterating this point at oral argument, counsel explained that the government has changed its policy for the review of FOIA requests to ensure that all applicable exemptions are raised at the outset.

To sum up, because the Government's failure to raise all FOIA exemptions at the outset resulted from human error, because wholesale disclosure would pose a significant risk to the safety and privacy of third parties, and because the Government has taken steps to ensure that it does not make the same mistake again, we see this case as inappropriate for the rigid "press it at the threshold, or lose it for all times" approach urged by August. We remand to the district court for in camera consideration of the applicability of FOIA Exemptions 7(C), 7(D), and 7(F).

*So ordered.*