Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports.  Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued December 4, 2008         Decided March 6, 2009

No. 08-5060

PAULINE STONEHILL, CO-EXECUTOR AND CO-SPECIAL ADMINISTRATOR OF THE ESTATE OF HARRY S. STONEHILL, APPELLANT

v.

INTERNAL REVENUE SERVICE, APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 06cv00599)


*Robert E. Heggestad* argued the cause and filed the briefs for appellant.

*Jonathan S. Cohen*, Attorney, U.S. Department of Justice, argued the cause for appellee.  With him on the brief were *Nathan J. Hochman*, Assistant Attorney General, *Jeffrey A. Taylor*, U.S. Attorney, and *Bethany B. Hauser*, Attorney. *John A. Dudeck Jr.*, Attorney, entered an appearance.

Before: HENDERSON, ROGERS and GRIFFITH, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The issue in this appeal is whether an agency may withhold documents under Exemption 5 of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(5), when it did not invoke the same underlying privilege claims in an ongoing discovery dispute in a different, non-FOIA case in which those documents were withheld as irrelevant. Harry S. Stonehill, through his estate, maintains that the waiver rule requiring all FOIA exemptions to be raised at the same time in the original district court FOIA proceedings, *see, e.g.*, *Maydak v. Dep't of Justice*, 218 F.3d 760, 764 (D.C. Cir. 2000), should be extended to apply to contemporaneous proceedings involving the same documents and parties and equally applicable privileges. However, Stonehill's suggestion to extend the FOIA waiver rule to discovery proceedings overlooks critical differences between the two information-gathering regimes such that the extension would not necessarily advance the policy goals underlying the waiver rule. Accordingly, we affirm the grant of summary judgment to the IRS.

## I.

This FOIA case is intertwined with Stonehill's effort to obtain vacation of a judgment foreclosing tax liens on his property. He seeks through civil discovery and FOIA to obtain documents that would show that United States law enforcement officials, in resisting a motion to suppress evidence, misrepresented the United States' involvement in a 1962 raid on Stonehill's offices in the Philippines by Philippine law enforcement authorities. *See United States v. Stonehill*, 53 F. App'x 470, 471 (9th Cir. 2002) (unpublished) ("*Stonehill III*");

*United States v. Stonehill*, 702 F.2d 1288, 1292 (9th Cir. 1968) ("*Stonehill II*"); *Stonehill v. United States*, 405 F.2d 738, 743-46 (9th Cir. 1968) ("*Stonehill I*"); Appellant's Br. at 7-8. The Ninth Circuit has suggested that suppression of the seized evidence, consisting of thirty-five truckloads of documents, would have been required under the Fourth Amendment if United States agents had conducted the raids. *Stonehill I*, 405 F.2d at 743.

Stonehill initially filed a FOIA request with the IRS on July 10, 1998, on behalf of himself and his business associate Robert P. Brooks. He requested all records pertaining to Stonehill and Brooks, including particular documents regarding the early 1960s investigation of their Philippines businesses. The IRS responded that only five responsive documents could be found after "thorough research." Letter from Stephen H. Flesner, Disclosure Officer, Internal Revenue Service, to Robert E. Heggestad, Heggestad & Weiss, PC (undated). On January 5, 1999, Stonehill requested additional information regarding IRS materials referenced in documents he had obtained from the State Department. The IRS responded that the documents could not be located and suggested that the Justice Department might be able to provide more helpful documents. Stonehill filed an administrative appeal and the IRS repeated that the documents could not be located.

On October 2, 2000, based on documents he had received from other agencies in response to his FOIA requests, Stonehill filed a motion pursuant to Federal Rule of Civil Procedure 60(b) in the Central District of California to vacate the tax judgment on the ground it was procured through a fraud on the court. He also renewed his FOIA request with the IRS on March 15, 2001. The IRS initially stayed review, responding only on October 16, 2001, after the district court had denied Stonehill's Rule 60(b) motion on August 28, 2001. The IRS informed Stonehill that approximately 90 boxes containing responsive documents had

been located.  On November 26, 2002, the IRS issued a final response to Stonehill's FOIA request, stating that some documents had been provided to him and others were being withheld or redacted pursuant to FOIA Exemptions 3, 5, 7(C), and 7(D).  On June 17, 2003, the IRS General Appeals office issued a partial determination of Stonehill's appeal, affirming the disclosure officer's decision that certain exemptions applied while reserving judgment on certain documents withheld under Exemption 3 that were not yet available for review.  On September 5, 2003, that office advised Stonehill that it was suspending review of the remaining Exemption 3 documents while the discovery litigation was ongoing in the district court following a remand by the Ninth Circuit, *see Stonehill III*, 53 F. App'x 470; the office noted that if Stonehill prevailed in the district court, his FOIA appeal would appear to be rendered moot.

On December 20, 2005, the California district court granted Stonehill's motion to compel production of documents and rejected the IRS's claims that the attorney-client privilege and work product doctrine barred production.  The district court ordered the government to "turn over documents regarding the 1966 Tax Division investigation into the government's role in the 1962 raids." *United States v. Stonehill*, No. CV 65-127-PA, at 8 (C.D. Cal. Dec. 20, 2005) ("*Stonehill IV*").[1]   The district court also denied the motion to compel production of documents involving third-party taxpayer information and some treaty obligation information, as well as some confidential informant information redacted by the Central Intelligence Agency. *Id.* at 4-8.  Although the IRS produced some documents pursuant to

---

[1] The case is lodged in the United States District Court for the District of Oregon.

the discovery order, those documents were redacted on relevance grounds; other documents were withheld as irrelevant.

On March 31, 2006, Stonehill filed his FOIA complaint in the district court here, seeking production of IRS records from the Stonehill files regarding his former attorney. In an amended complaint he requested additional documents responsive to his 1998 FOIA request. The IRS produced a *Vaughn* index, invoking Exemptions 3, 5, 6, and 7(C), and moved for summary judgment. In opposing summary judgment, Stonehill argued the IRS was collaterally estopped from raising the same privileges in the FOIA litigation as it raised in the Rule 60 proceeding, and was barred from invoking for the first time the deliberative process privilege as to 172 documents, as the IRS had not opposed disclosure of any documents based on the deliberative process privilege in the Rule 60 discovery proceeding. He further argued that the IRS could not raise the attorney work product doctrine as to 681 documents, or 26 U.S.C. § 6103, protecting confidentiality of tax information, as a justification for withholding 157 documents under FOIA Exemption 3, because the IRS had not asserted those grounds for nondisclosure with respect to those particular documents in the Rule 60 proceeding.

The D.C. district court agreed that the IRS was collaterally estopped with respect to documents for which it had claimed the same justifications for nondisclosure in discovery. The California district court's December 2005 decision had applied the same criteria in assessing the claimed privileges as apply under Exemption 5 and the issue had been fully and fairly litigated then. However, the district court rejected Stonehill's waiver argument with regard to new privilege claims and granted summary judgment for the IRS.

## II.

On appeal, Stonehill urges adoption of a rule that where parallel FOIA and non-FOIA proceedings are pending contemporaneously involving the same documents, the same reviewing body or officer, and the same, equally applicable privileges, failure to raise a privilege in one proceeding will constitute a waiver in the parallel proceeding, absent compelling circumstances. *See* Appellant's Br. at 27. Alternatively, he urges this court to hold that waivers occurred in his case because by not raising the deliberative process and attorney work product privileges in the parallel discovery proceeding, the IRS intentionally relinquished its right to assert them in this FOIA proceeding. Specifically, he points out that despite earlier opportunities to invoke privileges, the IRS delayed its review and production of documents and conducted unnecessary duplicative document reviews in response to his FOIA request, with the result that his effort to gain access to information has been unduly delayed. Now, over a decade after his initial FOIA request, he is confronted with newly invoked FOIA exemptions involving privileges that could have been asserted earlier in resisting discovery.

The requirement for an agency, as a general rule, to invoke all FOIA exemptions "'at the same time, in the original district court proceedings,'" *August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) (quoting *Maydak v. Dep't of Justice*, 218 F.3d 760, 764-65 (D.C. Cir. 2000)), is premised on two policy goals: (1) "the interest in judicial finality and economy, which has 'special force in the FOIA context, because the statutory goals — efficient, *prompt*, and full disclosure of information — can be frustrated by agency actions that operate to delay the ultimate resolution of the disclosure request,'" *id.* (quoting *Senate of Puerto Rico v. Dep't of Justice*, 823 F.2d 574, 580 (D.C. Cir. 1987)), and (2) preventing the government from playing cat and

mouse by "withholding its most powerful cannon until after the [d]istrict [c]ourt has decided the case and then springing it on surprised opponents and the judge," *id.* Basic "fairness to parties seeking disclosure ordinarily requires that they be afforded a full and concentrated opportunity to challenge and test comprehensively the agency's evidence regarding all claimed exemptions," *Senate of Puerto Rico*, 823 F.2d at 580.

The FOIA disclosure regime, however, is distinct from civil discovery. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 144 n.10 (1975). Different considerations determine the outcome of efforts to obtain disclosure: relevance, need, and applicable privileges – bounded by the district court's exercise of discretion – in the discovery regime, *see* FED. R. CIV. P. 26(b)(1), statutory exceptions reflecting a congressional balancing of interests in FOIA. *See North v. Walsh*, 881 F.2d 1088, 1095 (D.C. Cir. 1989). Because these considerations present different issues, that a document is exempt from discovery does not necessarily mean it will be exempt from disclosure under FOIA. *Id.*; *cf.* 18 CHARLES ALLEN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4417, at 449 (2d ed. 2002). Additionally, while information disclosed during discovery is limited to the parties and can be subject to protective orders against further disclosure, when a document must be disclosed under FOIA, it must be disclosed to the general public and the identity of the requester is irrelevant to whether disclosure is required. *See FTC v. Grolier Inc.,* 462 U.S. 19, 28 (1983); *Loving v. Dep't of Defense*, 550 F.3d 32, 39 (D.C. Cir. 2008); *North*, 881 F.2d at 1095-96. Conversely, even as to FOIA Exemption 5, which incorporates the privileges the government typically enjoys in pretrial discovery, *see Grolier*, 462 U.S. at 28, not all documents available in discovery are also available pursuant to FOIA. Exemption 5 "protects only those memoranda which would not normally be discoverable in civil litigation against an agency,"

*Ryan v. Dep't of Justice*, 617 F.2d 781, 790 (D.C. Cir. 1980), whereas case-specific exceptions can sometimes permit discovery of otherwise privileged material. *See Grolier*, 462 U.S. at 28 ("It is not difficult to imagine litigation in which one party's need for otherwise privileged documents would be sufficient to override the privilege but that does not remove the documents from the category of the normally privileged."). The fact, then, that certain FOIA exemptions overlap with grounds for nondisclosure in discovery does not require extending the equitable FOIA waiver rule even when the discovery proceedings and FOIA litigation are contemporaneous and involve the same documents and parties and equally applicable privileges.

Given the distinct nature of these two information-gathering regimes, extension of the FOIA waiver rule to discovery proceedings would not advance the policy interest in finality and judicial economy, which is based on FOIA's goal of prompt disclosure of information. *See, e.g., Senate of Puerto Rico*, 823 F.2d at 580. Stonehill maintains that allowing the IRS to raise FOIA exemptions for the first time in this FOIA litigation has resulted in unnecessary delay and wasted judicial resources. In part, he offers, this is because the IRS undertook a separate review of the documents for the FOIA proceeding even though the IRS had previously reviewed the documents in response to his discovery requests. However, for two principal reasons we conclude Stonehill has not shown that extension of the FOIA waiver rule would eliminate an agency's need to conduct a separate FOIA review or otherwise avoid necessary delays.

First, although the grounds for nondisclosure underlying FOIA Exemptions 3 and 5 may be invoked in civil discovery, some FOIA exemptions are not applicable to discovery. Even after reviewing documents for privileges in response to a discovery request, an agency could reasonably undertake a

separate review to determine whether other exemptions are applicable. Likewise, even those privileges that are available both in discovery and in the FOIA context may not be equally applicable in the two proceedings. Therefore, an agency could reasonably reconsider its invocation, or lack thereof, of certain privileges before making determinations in the FOIA litigation. That an agency ultimately may conclude that the privileges are equally applicable would not necessarily mean that it could know this in advance of a separate FOIA-specific review. Similarly, as the IRS did here, an agency may need to assess the applicability of any unwaivable statutory exemptions, like 26 U.S.C. § 6103, which protects confidentiality of tax information. *See August*, 328 F.3d at 701.

Second, the stakes of disclosure are different in the two regimes, justifying and arguably necessitating separate reviews with distinct considerations in mind during each. Documents released in a FOIA action must be made available to the public as a whole, *North*, 881 F.2d at 1096, and, unlike in civil discovery, *see* FED. R. CIV. P. 37, there is no opportunity to obtain a protective order. In that respect, the stakes of disclosure for the agency are greater in the FOIA context. The stakes in the discovery context are also high insofar as there is a risk of a production order if a privilege is not invoked and because of the generally non-appealable nature of discovery orders, *see In re England*, 375 F.3d 1169, 1174 (D.C. Cir. 2004). However the agency may prioritize these considerations, the motivating concerns are distinct in the two contexts.

Extending the waiver rule, then, would not necessarily prevent separate reviews of documents for parallel proceedings involving the same documents and privileges that turn out to be equally applicable. Moreover, even to the extent a waiver rule might eliminate the need for a separate review in response to a FOIA request, the rule itself could result in delay in judicial

resolution of the discovery issues while the agency, anticipating the possibility of future FOIA litigation, prepared a *Vaughn* index or developed reasons for objecting to release in a later FOIA case even where those reasons would not be raised in the discovery proceeding; the agency would need to assess all possible privileges even after it determined that the documents were irrelevant to the non-FOIA proceedings. *Cf. North*, 881 F.2d at 1099.

Neither would extension of the FOIA waiver rule to discovery proceedings necessarily advance the second goal of promoting government fairness by requiring the government, in general, to raise all its exemptions at the same time, so that neither the parties nor the court are surprised by assertions of new exemptions, and so that parties have concentrated opportunities to challenge agency attempts to withhold documents. *See Senate of Puerto Rico,* 823 F.2d at 580. Stonehill's reasons for extension of the FOIA waiver rule are stronger here. He contends he has been deprived of "a fair and concentrated opportunity to challenge the evidentiary basis for hundreds of IRS exemptions that have changed in the FOIA administrative proceeding, the Rule 60(b) proceeding and again in the FOIA litigation." Appellant's Br. at 36. A change of agency tactics in invoking privileges could indeed be evidence of the cat-and-mouse game of which this court has been "wary," *August*, 328 F.3d at 697.

The IRS's decision to invoke additional privileges in the FOIA litigation is hardly inconsistent with the different stakes involved, as distinct from reflecting a "sinister," *August*, 328 F.3d at 700, or improper motivation. For example, the IRS was under no obligation to invoke privileges for documents it had determined were irrelevant under Rule 26(b)(1) in the Rule 60(b) proceeding whereas it had the prerogative to invoke privileges for those documents in the FOIA litigation, where

relevance was not a bar to production. More significantly, the incentives for prompt agency review and production in response to document requests already exist. In the FOIA context, the waiver rule seeks to eliminate further litigation about newly asserted FOIA exemptions, once an exemption has been asserted and the court has rejected it. *See Maydak*, 218 F.3d at 764; *Ryan*, 617 F.2d at 792; *Jordan v. Dep't of Justice*, 591 F.2d 753, 779-80 (D.C. Cir. 1978). Absent such a rule, the IRS offers, an agency "might be tempted to litigate its claimed FOIA exemptions one by one for strategic reasons, *see Ryan*, 617 F.2d at 792, or to delay a careful examination of documents until its first claimed exemptions have been rejected, *see Jordan*, 591 F.2d at 780." Appellee's Br. at 30-31. As noted, in a discovery proceeding there are potentially adverse consequences if the agency fails to examine the documents and to raise all its defenses: The district court may order production, *see* FED. R. CIV. P. 37, and the agency could not rely on immediate appeal. On appeal, the agency would encounter the prudential rule against raising new arguments, *see Jordan*, 591 F.2d at 780, and could not rely, as a matter of course, on the opportunity to invoke additional defenses to production upon remand.

Given the existing motivations for an agency to be forthright in asserting its justifications for nondisclosure during discovery, extending the FOIA waiver rule to those proceedings would at best have a marginal benefit in terms of ensuring government fairness. Undue delays and duplicative agency conduct can be prevented through the exercise of district court discretion, *cf. Laborers' Int'l Union of N. Am. v. Dep't of Justice*, 772 F.2d 919, 920-21 (D.C. Cir. 1984), advancing many of the objectives that Stonehill seeks from extension of the waiver rule. For example, after succeeding in his appeal to the Ninth Circuit, Stonehill obtained a broad discovery production order from the district court in December 2005, *Stonehill IV*, No. CV 65-127-PA, at 8, 17, rejecting most of the IRS's privilege

objections. In the FOIA litigation, too, the district court ruled that collateral estoppel barred the IRS from invoking the same privileges for the same documents as in the Rule 60 proceeding as the issues had been decided under the same standards in the December 2005 order.

Although Stonehill was confronted in the FOIA action with new objections to disclosure long after he made his FOIA request, even the particular circumstances of his case do not show that extending the waiver rule to discovery would advance the relevant policy goals, much less that there was a waiver by the IRS. Assuming the IRS's stay of his administrative FOIA appeal pending resolution of the discovery proceedings was unfair to the extent it postponed resolution of asserted FOIA exemptions, the stay also arguably facilitated the efficient use of judicial resources by avoiding delays in the discovery proceeding attendant to agency reviews influenced by FOIA demands. The district court's application of estoppel principles in the FOIA action avoided further delay and conserved judicial resources regarding privileges that had already been litigated and decided. In any event, the stay alone does not show an improper motivation by the IRS. *Cf. Boyd v. Criminal Division of the U.S. Dep't of Justice*, 475 F.3d 381, 391 (D.C. Cir. 2007); *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314-15 (D.C. Cir. 2003). That the same person reviewed the requested documents in both proceedings lends no support for extension of the FOIA waiver rule, because the likely effect of a ruling on that basis would be for agencies to use different reviewers in different proceedings, hardly consistent with the goals of efficiency and prompt disclosure. That the IRS did not assert the deliberative process privilege during the administrative appeal is not inconsistent with the waiver rule, which requires only that all privileges be asserted in the original district court proceedings and even allows for exceptions in extraordinary circumstances. *See August*, 328 F.3d at 699. The IRS also is not

responsible for all of the delay in this case. *Cf. Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1498 (D.C. Cir. 1984). Stonehill submitted his FOIA request in 1998, but did not file his FOIA action until 2006, more than five years after he filed the Rule 60(b) motion. Given that Stonehill adopted a litigation strategy based on using two separate regimes for obtaining the desired documents, Stonehill's complaints about delay cannot be totally divorced from the choices he made.

Finally, Stonehill's proposal to extend the FOIA waiver rule to discovery proceedings fails to take into account that the waiver rule is not rigidly applied. Rather, the court sometimes excuses apparent waivers based on extraordinary circumstances, in recognition of the fact that "although FOIA strongly favors prompt disclosure, its nine enumerated exemptions are designed to protect those 'legitimate governmental and private interests' that might be 'harmed by release of certain types of information.'" *August*, 328 F.3d at 699 (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)); *see also EPA v. Mink*, 410 U.S. 73, 80 (1973). Absent evidence of improper motives for obtaining a tactical advantage, interim developments including the factual development of a case or changes in an applicable legal doctrine may warrant allowing an agency to invoke an exemption for the first time on appeal. *Id.* at 700. Implicit in this approach is the acknowledgment that, given the balance of interests reflected in FOIA, some delays are inevitable in litigation over the invocation of statutory exemptions. Here, the several discovery proceedings and Stonehill's successful appeal to the Ninth Circuit led to production requirements that, to some extent, may have affected the IRS's approach in resisting discovery and hardly curtailed its efforts to protect privileges in the FOIA proceeding.

Congress has addressed concerns about delays in civil proceedings in the Civil Justice Reform Act of 1990, *see* 28

U.S.C. §§ 471-73, and district court rules reflect such efforts, *see, e.g.*, D.D.C. R. 16.3 (pre-trial conference requirement, largely mirroring D.D.C. Civil Justice Expense and Delay Reduction Plan, eff. Mar. 1, 1994). But delays attendant to information-gathering regimes may often simply be the result of additional searches for documents as well as additional document reviews. Some delay may be reduced, as occurred here, through the district court's exercise of discretion to facilitate production of documents and to eliminate needless relitigation through application of equitable estoppel principles. Although the IRS did not produce 90 boxes of documents until after the California district court denied Stonehill's Rule 60(b) motion, and then stayed the administrative appeal pending the district court's discovery decision on remand, Stonehill does not suggest that the IRS would have located the documents sooner or proceeded without staying the FOIA appeal had the FOIA waiver rule applied to discovery. Any unfairness caused by release of requested documents after Stonehill's death is mitigated by his estate's vigorous pursuit of his claims. Considering the circumstances as a whole, then, we are not persuaded that the court should link the two information-gathering regimes through a waiver rule when doing so would not necessarily advance the policy goals underlying the rule. Delays within the FOIA regime, Stonehill's principal focus, do not provide a rationale for linking its waiver rule to discovery where different considerations are involved. Accordingly, we affirm the grant of summary judgment.