**BALTIA AIR LINES, INC., Appellant,**

v.

**TRANSACTION MANAGEMENT, INC., Appellee.**

No. 95–7301.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 10, 1996.

Decided Oct. 29, 1996.

Kathleen I. McGuire, argued the cause and filed the briefs for appellant.

Miguel S. Lawson, Washington, DC, argued the cause for appellee, with whom Filiberto Agusti, was on the brief.

Before: EDWARDS, Chief Judge, WILLIAMS and SENTELLE, Circuit Judges.

Opinion of the Court by Chief Judge EDWARDS.

HARRY T. EDWARDS, Chief Judge:

This is an action under FEDERAL RULE OF CIVIL PROCEDURE 60(b). The appellant, Baltia Air Lines, Inc. ("Baltia"), seeks to reverse a decision of the District Court refusing to set aside a judgment confirming an arbitration award in favor of Transaction Management, Inc. ("TMI"). There is no legal basis upon which to set aside the District Court's decision. As it turns out, however, the relief sought by Baltia is unnecessary. The contract that was the subject of the arbitration award terminated years ago, and TMI can make no claims against Baltia for any commissions on transactions beyond the term of the expired agreement. Thus, Baltia has all the relief it seeks.

## I. BACKGROUND

Baltia is a start-up airline that has sought to provide air service between the United States and Eastern Europe. Several years ago, Baltia signed a consulting agreement with TMI, a financial consulting firm run by Steven Sneed and Ed Rosner. The consulting contract ran from November 1, 1990 to May 1, 1991. It is undisputed that, during the life of the parties' contract, TMI never obtained any financing for Baltia.

On June 26, 1991, after the expiration of the consulting contract, Sneed read an article in the *New York Times* reporting that Baltia had received $148 million in financing. Sub-

sequently, TMI claimed that, under the consulting contract, it was owed commissions on the $148 million. TMI contended that, pursuant to paragraphs III.A.2[1], III.A.3(a)[2], and IV.C[3] of the consulting agreement, commissions had to be paid on *any* financing obtained by Baltia whether or not TMI was involved in procuring the financing. Baltia disagreed, insisting that TMI was only entitled to commissions on financing that it helped to obtain.

Baltia sought arbitration in accordance with paragraph XVII[4] of the consulting agreement. The arbitrator found that under paragraphs III.A.2(a)-(c) and III.A.3(a) of the agreement, "payment of the appropriate cash closing fees in the amounts and at the times specified in said Paragraphs is not subject to the condition that the source of the funds for the closing was obtained by TMI." Award of Arbitrator, ¶¶ 1–2, *reprinted in Appendix to Appellant's Brief at* A1. Accordingly, the arbitrator ordered that, in accordance with paragraph IV.C of the agreement, Baltia was obligated to "insert or cause to be inserted in the relevant documents relating to the Closing, provisions in form and substance satisfactory to TMI implementing the provisions of Paragraphs III.A.2 and III.A.3, as interpreted in this Order." Award of Arbitrator, ¶ 3(a), *reprinted in Appendix to Appellant's Brief at* A1.

TMI then filed an action in District Court to confirm the arbitration award. After hearing the parties' competing claims, the District Court granted TMI's motion to confirm the award. *Transaction Management, Inc. v. Baltia Air Lines, Inc.*, No. 91–cv–2829 (D.D.C. May 20, 1992). The judgment of the District Court was upheld on appeal by this

1. Consulting Services Agreement, ¶ III.A.2, *reprinted in Appendix to Appellant's Brief at* A5–A6.

2. Consulting Services Agreement, ¶ III.A.3(a), *reprinted in Appendix to Appellant's Brief at* A7.

3. Consulting Services Agreement, ¶ IV.C, *reprinted in Appendix to Appellant's Brief at* A7.

4. Paragraph XVII provides:
   XVII. *Arbitration.* Except as otherwise provided in this Agreement, each and every dispute under this Agreement or arising out of this relationship that cannot be settled amicably by the parties shall be settled by arbitration

in the City of Washington, District of Columbia, in accordance with the provisions of the Federal Arbitration Act under the Commercial Arbitration Rules of the American Arbitration Association and the "Expedited Procedures" provisions thereof. The arbitrator shall include all reasonable fees and costs to the prevailing party, (including, without limitation, reasonable attorneys' fees and expenses) and may be entered into judgment in any court of competent jurisdiction.
Consulting Services Agreement, ¶ XVII, *reprinted in Appendix to Appellant's Brief at* A14–A15.

court. *Baltia Air Lines, Inc. v. Transaction Management,* 15 F.3d 1160 (D.C.Cir.1994).

In August 1994, more than a year after the District Court had entered the judgment confirming the arbitration award, Baltia filed the instant action under FEDERAL RULE OF CIVIL PROCEDURE 60(b), seeking relief from the judgment. Baltia alleged that newly discovered evidence showed that the original contract between Baltia and TMI was fraudulently obtained, that Sneed and Rosner perjured themselves during the arbitration proceeding, and that TMI's attorney made misrepresentations to the District Court during the proceedings to confirm the arbitration award. The District Court granted TMI's motion to dismiss, holding that Baltia was not entitled to relief under Rule 60(b) of the Federal Rules of Civil Procedure.

## II. DISCUSSION

### A. *The Action for Relief Under Rule 60(b)*

■ FEDERAL RULE OF CIVIL PROCEDURE 60(b) provides in relevant part:

**(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or pro-

ceeding was entered or taken.... This rule does not limit the power of a court to entertain an independent action ... or to set aside a judgment for fraud upon the court.

FED.R.CIV.P. 60(b). Although Rule 60(b) is an appropriate vehicle by which to challenge a judgment confirming an arbitration award, Baltia has not met the standards for relief under the rule.

Baltia cannot challenge the judgment confirming the arbitration award under either 60(b)(2) (newly discovered evidence) or 60(b)(3) (fraud), because, under the terms of the rule, any such motion must be made within one year after the judgment was entered. The judgment confirming the arbitration award in favor of TMI was entered in May 1993 and the current action was filed in August 1994, more than one year later. Moreover, Baltia cannot circumvent the limitations of 60(b)(2) and (3) by relying on the catchall provision of 60(b)(6). As this court stated in *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.,* 810 F.2d 243 (D.C.Cir.1987):

Rule 60(b)(6) permits a court to grant relief from a final judgment for "any *other* reason justifying relief...." (Emphasis added.) The courts have universally interpreted "other" to mean other than the reasons specified in subsections 60(b)(1)–60(b)(5)....

*Id.* at 249. To interpret 60(b)(6) any other way would make the time limitations on motions under 60(b)(1)-(3) meaningless. *See id.* ("[I]t is generally accepted that cases clearly falling under Rule 60(b)(1) cannot be brought within the more generous Rule 60(b)(6) in order to escape the former's one year time limitation.").

■ Nonetheless, Rule 60(b) states that it "does not limit the power of a court to entertain an independent action ... to set aside a judgment for fraud upon the court." FED. R.CIV.P. 60(b). "Fraud on the court ... is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury." *Bulloch v. United States,* 721 F.2d 713, 718 (10th Cir.1983). Fraud upon the court refers only to "very unusual

cases involving far more than an injury to a single litigant." 11 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2870 at 415 (1995) (internal quotation marks omitted). Examples include the bribery of a judge or the knowing participation of an attorney in the presentation of perjured testimony. *Id.* at 418–20.

There are suggestions in the record of this case that Sneed and Rosner may have been involved in some underhanded dealings, that the consulting agreement between TMI and Baltia may have been fraudulently obtained, that Sneed and Rosner may have perjured themselves during the arbitration, and that TMI's attorney may have misled the District Court during the proceedings to confirm the arbitration award. Even assuming that all of this occurred, there is still no basis for a finding of fraud on the court as that concept has been defined. It is particularly noteworthy in this regard that any misrepresentations to the District Court were not relevant to the court's decision to confirm the arbitration award. Accordingly, we affirm the District Court's dismissal of Baltia's complaint.

B. *The Meaning of the District Court's Judgment*

■ During the course of oral argument before this court, a question arose as to why this action had been brought by Baltia. The consulting contract that gave rise to the disputed arbitration award expired years ago, on May 1, 1991, so it was unclear to the court what was at stake. Baltia's counsel explained that her client sought relief from judgment because, even today, officials at TMI continue to demand commissions whenever Baltia pursues business financing arrangements. According to counsel, TMI's harassing tactics have made it all but impossible for Baltia to secure financing.

In response, counsel for TMI did not deny the substance of Baltia's contentions. Indeed, TMI's attorney made the astonishing claim that the arbitration award, and the District Court's judgment confirming it, give TMI a right *in perpetuity* to commissions on *any* financing obtained by Baltia, *i.e.*, from any source, at any time for the life of the corporation! And counsel added that Baltia is obliged to pay commissions even though TMI is doing absolutely nothing to assist Baltia, and has no obligation under the contract to do anything. After listening to TMI's counsel, and the absurd position that he advanced,[5] it was easy to understand why Baltia had returned to the District Court for relief.

Although it cannot obtain relief under Rule 60(b), Baltia does not leave this litigation empty handed. TMI's position evinces a flagrant distortion of the District Court's judgment. If nothing else, we can confirm for Baltia that TMI's position is groundless and that the rulings in this case pose no danger for Baltia in the future. The District Court never held that TMI is entitled to commissions in perpetuity; indeed, the arbitrator never held that TMI has such a right, and the contract between the parties cannot support such a claim. The only language in the contract cited by TMI in support of its astounding assertion of perpetual commissions, paragraph II.B,[6] simply means that any right to commissions that arose during the term of the contract may be enforced after the expiration of the contract. TMI could cite no authority whatsoever for any other reading of this provision, and the arbitrator's award does not even cite this paragraph of the contract, so it would be ridiculous to think that the arbitrator or the District Court meant to endorse a different construction of the contract.

In short, TMI can make no claims against Baltia for commissions on any transactions beyond the term of their expired agreement. Since the parties' contract has now long expired, the only possible financing to which

---

5. The young attorney assigned to argue for TMI seemed reluctant at first to posit such an extraordinary argument, but he forged ahead upon receiving a nod of approval from a more senior attorney who was sitting at counsel table.

6. Paragraph II.B provides:

The provisions of Sections III, IV, V, VI, VIII, IX, XVII, XIX, and XX.A of this Agreement shall survive any expiration, termination or cancellation of this Agreement.

Consulting Services Agreement, ¶ II.B, *reprinted in* Appendix to Appellant's Brief at A5.

the arbitration award could apply is the alleged "Waterford" financing reported by the *New York Times* in June 1991. As Baltia has represented that no financing was ever obtained from Waterford, the arbitration award would appear to be worthless.

### III. CONCLUSION

We affirm the judgment of the District Court dismissing the action under Rule 60(b). However, we note that the relief sought by Baltia is unnecessary, because TMI can advance no claims against Baltia for commissions on transactions beyond the term of the long expired consulting contract.

*So ordered.*