In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-3732

IN RE:

GOLF 255, INC.

*Debtor*.

APPEAL OF:

NICK JAKICH and JAY DUNLAP.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:10-cv-00529-GPM—**G. Patrick Murphy**, *Judge*.

ARGUED APRIL 15, 2011—DECIDED JULY 22, 2011

Before POSNER and MANION, *Circuit Judges*, and LEFKOW, *District Judge*.*

POSNER, *Circuit Judge*. Nick Jakich and Jay Dunlap owned a corporation the principal asset of which was a golf course. In October 2006 the corporation's creditors filed a petition to have Golf (as we'll call the corporation)

_____

* Hon. Joan Humphrey Lefkow of the Northern District of Illinois, sitting by designation.

declared bankrupt under Chapter 11 of the Bankruptcy Code. Dunlap testified in opposition to the petition, but the bankruptcy court granted it and appointed as trustee Robert Eggmann. He filed a motion for permission to sell the golf course. The motion was granted, again over opposition by Dunlap. Jakich and Dunlap filed repeated motions opposing sale but all were denied. A deed surfaced, apparently signed by Jakich, purporting to transfer the golf course from Golf to a company the address of which is the same as Dunlap's address. Trustee Eggmann obtained an injunction against the transfer on the ground that it would violate both the automatic stay in bankruptcy and the sale order.

The bankruptcy judge approved the sale of the golf course to a local recreation district for $5 million. The sale closed in March of 2007 and the proceeds were sufficient to pay all creditors of Golf, other than insiders, their claims in full, while insider creditors, who included Jakich but not Dunlap, received substantial partial satisfaction of their claims. Dunlap and Jakich appealed from the bankruptcy judge's sale order, but the district court dismissed the appeal in June 2007 as moot because the bankruptcy judge, having approved the sale, had no authority to undo it. 11 U.S.C. § 363(m). Dunlap filed motions in the bankruptcy court to remove the trustee and dismiss the bankruptcy proceeding. The bankruptcy judge denied the motions, as he did similar motions filed by Dunlap and Jakich the following year.

Represented by attorney Steven T. Stanton, who entered the case in August 2008, almost a year and a half after

the sale of the golf course, Dunlap and Jakich moved for leave to conduct discovery to establish whether the bankruptcy proceeding and sale had been fraudulent. The bankruptcy judge denied that motion too. More than a year later they filed motions asking the bankruptcy judge to rescind the sale and to investigate—by ordering production of documents from parties to the bankruptcy proceeding (see Fed. R. Bankr. P. 2004)—fraud allegedly committed by Michael Kielty. Kielty had been a shareholder of Golf, had been involved in its management, and indeed seems to have been for a time in control of the company. But he had left it, and was an outsider creditor when, along with three other creditors of Golf, he signed the petition to declare the company bankrupt. The bankruptcy judge construed these as motions under Rule 60 of the civil rules (made applicable to bankruptcy proceedings by Bankruptcy Rule 9024) to set aside his grant of the petition for bankruptcy and approval of the sale of the golf course.

Eggmann, acknowledged by lawyer Stanton at argument to be "an honorable man," had investigated the charge of fraud and found it to be groundless. And Eggmann told us at argument without being contradicted that the U.S. Trustee for the Southern District of Illinois had likewise investigated the charge of fraud and likewise found it to be groundless. In any event fraud is a ground for setting aside a judgment only if the motion seeking that relief is filed within a year after the judgment—unless the fraud is "fraud on the court." See Fed. R. Civ. P. 60(b)(3), (6), (c)(1), (d)(3). Jakich and Dunlap claimed that it was. The bankruptcy judge dis-

agreed, and having disagreed denied relief because if Kielty's alleged conduct was construed as simple fraud rather than fraud on the court they had waited too long to complain.

In 2010 Eggmann moved to close the bankruptcy case. Jakich and Dunlap objected, again asking the bankruptcy judge to investigate their charge of fraud against Kielty. The judge refused and ordered the case closed because nothing remained to be done: the golf course had been sold and the creditors had been paid in accordance with their priorities. Jakich and Dunlap appealed. The district judge affirmed, precipitating this appeal.

The appellants' opening brief states that creditor Kielty had "contrived the involuntary bankruptcy proceedings as part of a 'fraud on the court.' Employing his knowledge and experience as an attorney, Kielty manipulated the parties and the court system to force the emergency sale of [the] golf course to the purchaser (and under terms of) his choosing." Jakich and Dunlap argued that they were denied an opportunity to conduct the discovery that would have established the validity of their allegations, or to present evidence that their lawyer, Stanton, had already obtained that would have established the prima facie accuracy of the allegations and made a compelling case for the bankruptcy court's permitting them to conduct further discovery.

The term "fraud on the court" is not defined in Rule 60 or elsewhere in the federal rules, and the definition most often offered by the courts (including our own)— that it consists of acts that "defile the court," e.g., *Drobny*

*v. Commissioner*, 113 F.3d 670, 677-78 (7th Cir. 1997); *Appling v. State Farm Mutual Automobile Ins. Co.*, 340 F.3d 769, 780 (9th Cir. 2003); *Harbold v. Commissioner*, 51 F.3d 618, 622 (6th Cir. 1995); *Kupferman v. Consolidated Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972) (Friendly, C.J.); 12 *Moore's Federal Practice* § 60.21[4], p. 60-56 and n. 20 (3d ed. 2011)—though vivid, doesn't advance the ball very far. *Drobny*'s full definition advances it a little farther: "'that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court [i.e., lawyers] so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases.'" 113 F.3d at 677-78 (emphasis omitted) (quoting *Kenner v. Commissioner*, 387 F.2d 689, 691 (7th Cir. 1968), which in turn was quoting an earlier edition of the *Moore* treatise).

The problem of definition arises from the fact that a motion to set aside a judgment on the ground of fraud on the court has no deadline. It must therefore be defined narrowly lest it "become an open sesame to collateral attacks, unlimited as to the time within which they can be made by virtue of the express provision in Rule 60(b) [now 60(d)] on this matter, on civil judgments." *Oxxford Clothes XX, Inc. v. Expeditors Int'l of Washington, Inc.*, 127 F.3d 574, 578 (7th Cir. 1985); see also *Drobny v. Commissioner*, *supra*, 113 F.3d at 678. The question is, how narrowly? To answer this question we need to consider what kind of fraud ought to be a ground for setting aside a judgment perhaps many years after it was entered. The answer is the kind of fraud that ordi-

narily couldn't be discovered, despite diligent inquiry, within a year, and in some cases within many years—cases in which there are no grounds for suspicion and the fraud comes to light serendipitously. Examples are bribery of a judge or exertion of other undue influence on him, jury tampering, and fraudulent submissions by a lawyer for one of the parties in a judicial proceeding, such as tendering documents he knows to be forged or testimony he knows to be perjured. See *Oxxford Clothes XX, Inc. v. Expeditors Int'l of Washington, Inc.*, *supra*, 127 F.3d at 578; *In re Whitney-Forbes, Inc.*, 770 F.2d 692, 698 (7th Cir. 1985); *Baltia Air Lines, Inc. v. Transaction Management, Inc.*, 98 F.3d 640, 642-43 (D.C. Cir. 1996); *Root Refining Co. v. Universal Oil Products Co.*, 169 F.2d 514, 534-35 (3d Cir. 1948); 12 *Moore's Federal Practice*, *supra*, § 60.21[4], pp. 60-56 to 60-59.

One might not think that a lawyer's being complicit in a fraud would make it harder to detect the fraud within a year of final judgment. But whereas perjury by witnesses is a known danger and lawyers for the adverse party have ways of countering it through discovery, other investigatory means, and cross-examination, perjury and other outright fabrications by lawyers are less common and more difficult to ferret out (lawyers are not witnesses, and therefore are not subject to cross-examination). That is the practical reason why a lawyer's perjury is deemed fraud on the court but simple perjury by a witness (perjury not suborned by a lawyer in the case) is not. See, e.g., *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245 (1944); *Gleason v. Jandrucko*, 860 F.2d 556, 559-60 (2d Cir. 1988); *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985) (en banc);

12 *Moore's Federal Practice, supra*, § 60.21[4][c], pp. 60-59 to 60-63.

The difference between simple perjury and perjury (or the equivalent, such as a forged exhibit) suborned or committed by counsel is illustrated by the Supreme Court's decision in *Hazel-Atlas Glass Co. v. Hartford-Empire Co., supra*. When Hartford-Empire's application for a patent on a machine for pouring molten glass into molds was faring badly in the Patent Office, lawyers for Hartford, together with Hartford officials, wrote an article extolling the invention and paid an expert to sign it, of course without disclosing to the Patent Office or Hazel-Atlas the true authors. The patent was granted, and Hartford sued Hazel-Atlas for infringement, lost in the district court, but persuaded the court of appeals to reverse—in part by directing the court to the article; for the court quoted copiously from it in its opinion in favor of Hartford. 322 U.S. at 240-42. The Supreme Court held that the conduct of Hartford's counsel was fraud on the court.

The case was unusual, as we noted in *In re Met-L-Wood Corp.*, 861 F.2d 1012, 1018 (7th Cir. 1988), because the fraud was directed in the first instance at the Patent Office rather than a court. But the district court and court of appeals were defrauded when counsel used the fraudulent article to bolster his client's case in those courts.

The contention that Kielty committed fraud on the court is baseless. Kielty is a lawyer, but he was not functioning in that capacity when he signed the petition to

declare Golf bankrupt. He was acting just as a creditor. A creditor who makes false representations in a bankruptcy proceeding, or encourages others to do so, is no different from a lying witness in any other case; and a witness's lies are not fraud on the court unless a lawyer in the case is complicit in them.

Kielty is accused of having encouraged his fellow outsider creditors to submit inflated claims in the bankruptcy proceeding; for the greater Golf's apparent debts, the more likely the bankruptcy judge would be to grant the petition for involuntary bankruptcy, as the outsider creditors wanted him to do (and as he did). Although Jakich and Dunlap contend that Golf was not insolvent when the petition by the outsider creditors was filed, that contention was definitively resolved against them in an order by the bankruptcy judge of February 6, 2007, noting that the record "clearly established" that Golf was insolvent. But as a signer of the bankruptcy petition Kielty did participate in forcing Golf into an involuntary bankruptcy, and as owners Jakich and Dunlap would have preferred a voluntary Chapter 11 bankruptcy. For then the bankruptcy judge might at their urging have permitted Golf to remain in operation as a debtor in possession, and that would have given the owners a shot at avoiding—more realistically, postponing—liquidation and being paid salaries by the corporation in the meantime. Involuntary bankruptcy turned out to be the right move for Kielty and the other outsider creditors (maybe for the insider creditors as well) because the recreation district paid more for the golf course than its estimated market value; as a result, all

of Golf's outsider creditors were paid in full and the insider creditors received substantial partial satisfaction of their claims.

Still, orchestrating the submission of claims that Kielty knew to be inflated, which would make Golf's financial position look worse than it was and increase the likelihood of a liquidation, would be a fraud by Kielty. But it would not be fraud on the court; and anyway the bankruptcy trustee, Eggmann ("an honorable man," lawyer Stanton acknowledges), the U.S. Trustee, the bankruptcy judge, the district judge, a mediator, and others who have looked into the fraud allegations have uniformly found none of them to have sufficient merit to warrant protracting the bankruptcy proceeding—especially as it is now four years since the golf course was sold.

The only relief the bankruptcy judge could give Jakich and Dunlap, moreover, would be to rescind the bankruptcy sale, and that would be improper unless the recreation district were a party to Kielty's alleged (but unproved and probably nonexistent) fraud. 11 U.S.C. § 363(m); see also *In re Edwards*, 962 F.2d 641 (7th Cir. 1992); *In re Chicago, Milwaukee, St. Paul & Pacific R.R.*, 799 F.2d 317, 329-31 (7th Cir. 1986); *In re Trism, Inc.*, 328 F.3d 1003, 1006 (8th Cir. 2003); *In re Mann*, 907 F.2d 923, 926 (9th Cir. 1990). And of that there is no evidence—though Jakich and Dunlap would like both Eggmann and the U.S. Trustee to investigate the possibility.

The motions and appeals filed, many by Stanton, on behalf of Jakich and Dunlap have been not only ground-

less but also obsessive, a form of harassment, unprofessional, and an abuse of the bankruptcy court, the district court, and this court. They give new meaning to the word pertinacity. This appeal is the culmination and we trust conclusion of an unedifying saga. The trustee has moved for sanctions under Rule 38 of the appellate rules, which authorizes an award of "just damages and single or double costs to the appellee" if the appeal was frivolous. The appellants have not responded to the motion. We grant it and direct the trustee to submit a request for a specific amount of damages and costs.

The judgment of the district court is

AFFIRMED.