# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 24-5276

September Term, 2025

FILED ON: FEBRUARY 17, 2026

PATRICK LENZ, DR., EXECUTOR OF THE ESTATE OF HARRY S. STONEHILL,
APPELLANT

v.

INTERNAL REVENUE SERVICE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:06-cv-00599)

Before: SRINIVASAN, MILLETT, and RAO, *Circuit Judges*

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs of the parties. The Court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* FED. R. APP. P. 36; D.C. CIR. R. 36(d). For the reasons stated below, it is:

**ORDERED** and **ADJUDGED** that the order of the district court issued on November 5, 2024, entering judgment in favor of appellee, be **AFFIRMED**.

\*       \*       \*

Dr. Patrick Lenz moved the district court for relief from a 2008 judgment in a Freedom of Information Act ("FOIA") case. Dr. Lenz's motion was made pursuant to both the court's inherent power to set aside a judgment for fraud on the court and Federal Rule of Civil Procedure 60(b)(6). The district court declined to grant relief under its inherent power in part because Dr. Lenz failed to establish the alleged fraud by clear and convincing evidence. The district court next construed the Rule 60(b)(6) motion as a Rule 60(b)(3) motion and denied it as untimely. Dr. Lenz appeals, challenging the district court's denial of his motion on both grounds. We affirm.

1

**I**

**A**

Federal Rule of Civil Procedure 60(b) lists six grounds on which a party can obtain relief from a final judgment, including "(3) fraud * * * misrepresentation, or misconduct by an opposing party[,]" and a catch-all provision allowing relief for "(6) any other reason that justifies [it]." Relief under Rule 60(b)(6) requires "'extraordinary circumstances' justifying the reopening of a final judgment[,]" *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (citation omitted), and "should be only sparingly used," *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980). All Rule 60(b) motions "must be made within a reasonable time[.]" FED. R. CIV. P. 60(c)(1). And motions based on grounds (1) through (3) must be made "no more than a year after the entry of the judgment or order or the date of the proceeding." *Id.*

As relevant here, Rule 60 "does not limit" a court's inherent power to "set aside a judgment for fraud on the court." FED. R. CIV. P. 60(d)(3); *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *Universal Oil Prods. Co. v. Root Refin. Co.*, 328 U.S. 575, 580 (1946); *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244–246 (1944); *Greater Bos. Television Corp. v. FCC*, 463 F.2d 268, 278 (D.C. Cir. 1971); *see also* 11 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2870 (3d ed. 1998). Fraud on the court is "fraud [that] is directed to the judicial machinery itself and is not fraud between the parties[.]" *Baltia Air Lines, Inc. v. Transaction Mgmt., Inc.*, 98 F.3d 640, 642 (D.C. Cir. 1996) (quotation marks omitted). Instead, fraud on the court refers to "very unusual cases" that involve not just "an injury to a single litigant[,]" but the "corruption of the judicial process itself[,]" such as the "bribery of a judge[.]" Wright & Miller, *supra*, § 2870 (quotation marks omitted); *see also Baltia Air Lines*, 98 F.3d at 642–643. "Nondisclosure by a party or the party's attorney" is not enough. Wright & Miller, *supra*, § 2870.

**B**

In 1962, local authorities raided Harry Stonehill's business offices in the Philippines, seizing large numbers of documents. *See United States v. Estate of Stonehill*, 660 F.3d 415, 418–419 (9th Cir. 2011) (detailing the background events). Relying in part on those documents, the Internal Revenue Service brought a civil tax case against Mr. Stonehill in federal district court. *See id.* at 419. Mr. Stonehill moved to suppress the documents as evidence obtained through an unlawful search, but the motion was denied on the ground that United States agents did not play a sufficient role in the raid to support suppression of the evidence. *United States v. Stonehill*, 274 F. Supp. 420, 426 (S.D. Cal. 1967), *aff'd*, 405 F.2d 738 (9th Cir. 1968). In 1980, the district court entered final judgment against Mr. Stonehill in the civil tax case, and the Ninth Circuit affirmed. *See United States v. Stonehill*, No. 65-cv-127, 1980 WL 1757, at *3 (C.D. Cal. April 19, 1980), *aff'd*, 702 F.2d 1288 (9th Cir. 1983).

In 1998, Mr. Stonehill filed a FOIA request, seeking documents from the IRS concerning the United States government's role in the raids. *See Stonehill v. IRS*, 534 F. Supp. 2d 1, 2 (D.D.C. 2008) ("*Stonehill I*"), *aff'd*, 558 F.3d 534 (D.C. Cir. 2009). He filed a second, identical request

in 2001. *Id.* at 2–3. In reviewing the 2001 request, an IRS attorney found a form stating that 86 boxes of relevant records had been shipped in 1982 to a federal archive, the Washington National Records Center. E.R. 279, 316. According to the IRS, after receiving the FOIA requests, it requested all 86 boxes from the Records Center, but it received only 84 of them. E.R. 283, 316. When the IRS informed the Records Center of the shortfall, the Center advised that it could not locate the remaining two boxes—boxes 17 and 83. E.R. 316; *see also* E.R. 283.

The IRS sought to withhold from disclosure certain documents responsive to the FOIA requests under a number of FOIA exemptions. *Stonehill I*, 534 F. Supp. 2d at 3–4. In 2006, Pauline Stonehill, Mr. Stonehill's successor, sued the IRS in the United States District Court for the District of Columbia to challenge those withholdings. *Id.* at 4. Eventually, the government moved for summary judgment on the issues of whether it had performed an adequate search for documents responsive to the FOIA requests and whether the exemptions permitted its withholding of certain documents. E.R. 38–43. Ms. Stonehill opposed the government's motion and cross-moved for summary judgment. *Stonehill I*, 534 F. Supp. 2d at 3. In each filing, she challenged the propriety of the withholdings, but she did not contest the adequacy of the agency's search. *See id.* at 5. The district court, in 2008, granted partial summary judgment to each party, approving some of the IRS's withholdings and rejecting others, and ordered the corresponding disclosures to Ms. Stonehill. *Id.* at 13. In the accompanying order, the district court further granted the IRS's motions in "all other respects" and denied Ms. Stonehill's cross-motion in "all other respects." E.R. 91. This court affirmed. *Stonehill*, 558 F.3d at 536.

## C

Sixteen years after the district court's 2008 final judgment in the FOIA case, Dr. Lenz, as the next successor plaintiff, moved for relief from the judgment under both Federal Rule of Civil Procedure 60(b)(6) and the court's inherent power to set aside judgments for fraud on the court. E.R. 128–195. Relying on documents obtained through other FOIA requests and subsequent litigation, Dr. Lenz asserted that the IRS, in obtaining the 2008 judgment, had falsely represented to the district court that boxes 17 and 83 could not be located and, in that way, had wrongly deprived Mr. Stonehill of access to records in those boxes. E.R. 189–193. In particular, Dr. Lenz argued that the 2007 declarations of IRS attorneys Richard Fultz and Mae Lew contained fraudulent statements. E.R. 190–193.

On November 5, 2024, the district court denied Dr. Lenz's motion to set aside the judgment. *Stonehill v. IRS*, No. 06-cv-599, 2024 WL 4679128, at *1 (D.D.C. Nov. 5, 2024) ("*Stonehill II*"). The district court construed Dr. Lenz's Rule 60(b)(6) motion as a Rule 60(b)(3) motion and denied it as time-barred. *See id.* at *3; *see also* FED. R. CIV. P. 60(c)(1). The court also declined to exercise its inherent power to invalidate the judgment, concluding that Dr. Lenz failed to establish fraud on the court for three "separate" reasons: (1) "fraudulent documents, false statements, and perjury * * * do not generally constitute fraud on the court" as a matter of law, *Stonehill II*, 2024 WL 4679128, at *4 (citation omitted); (2) Dr. Lenz failed to establish the alleged fraud by clear and convincing evidence, *id.*; and (3) the court did not rely on the allegedly fraudulent statements in reaching the challenged 2008 judgment, *id.* at *5.

3

Dr. Lenz timely appealed.   This court has jurisdiction under 28 U.S.C. § 1291.

## II

This court reviews for an abuse of discretion the district court's denial of relief under Rule 60(b)(3) or (b)(6).   *Summers v. Howard Univ.*, 374 F.3d 1188, 1192 (D.C. Cir. 2004); *Micula v. Government of Romania*, 101 F.4th 47, 54 (D.C. Cir. 2024) (citing *Salazar ex rel. Salazar v. District of Columbia*, 633 F.3d 1110, 1114–1115 (D.C. Cir. 2011)).   Because the parties do not ask this court to apply any different standard of review to the district court's decision declining to grant relief under its inherent power, we assume without deciding that abuse of discretion is the proper standard of review for that issue as well.   *See* Lenz Opening Br. 41; IRS Response Br. 26; *Micula*, 101 F.4th at 53 ("The parties assert that the abuse of discretion standard applies * * * and absent briefing the court will assume, without deciding, that it does."); *see also Chambers*, 501 U.S. at 44–45, 55 (reviewing for abuse of discretion an exercise of inherent power to sanction a litigant for bad-faith conduct, and explaining that inherent powers "must be exercised with restraint and discretion"); *Shepherd v. American Broad. Cos., Inc.*, 62 F.3d 1469, 1475 (D.C. Cir. 1995) (similar).

The party seeking relief from a judgment based on fraud on the court must prove the alleged fraud by clear and convincing evidence.   *See Shepherd*, 62 F.3d at 1476–1478; *accord King v. First American Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002); *Weese v. Schukman*, 98 F.3d 542, 552 (10th Cir. 1996); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989); *England v. Doyle*, 281 F.2d 304, 309–310 (9th Cir. 1960); Wright & Miller, *supra*, § 2870.

We have not yet decided what standard of review applies to the district court's factual findings regarding the movant's demonstration of fraud.   In cases involving similar exercises of the court's inherent power, we have applied clear-error review to the districts court's finding of predicate facts.   *See, e.g.*, *Parsi v. Daioleslam*, 778 F.3d 116, 126 (D.C. Cir. 2015) ("We review for clear error the [d]istrict [c]ourt's finding that [a]ppellants acted in bad faith sufficient to justify an award of attorney's fees under the court's inherent power.").   Other circuits have also applied clear-error review.   *See, e.g.*, *Sanders v. Melvin*, 25 F.4th 475, 480 (7th Cir. 2022); *United States v. One Assortment of 93 NFA Regulated Weapons*, 897 F.3d 961, 966 (8th Cir. 2018); *Hull v. Municipality of San Juan*, 356 F.3d 98, 101 (1st Cir. 2004); *Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259, 1268 (10th Cir. 1995) (citing FED. R. CIV. P. 52(a)(6)).   The parties do not squarely address this issue in their briefing and instead cite only the abuse-of-discretion standard applicable to a denial of relief from judgment under Rule 60(b)(6).   *See* Lenz Opening Br. 41; IRS Response Br. 26.   We need not resolve the issue because Dr. Lenz cannot prevail under either a clear-error or an abuse-of-discretion standard.

## A

On appeal, Dr. Lenz first challenges the district court's denial of his motion to set aside the 2008 judgment under the court's inherent power.   *See* Lenz Opening Br. 41–51.

4

We affirm because the district court did not clearly err or abuse its discretion in finding that Dr. Lenz failed to establish the alleged fraud by clear and convincing evidence. Under the clear-and-convincing standard, the district court must "reach a firm conviction of the truth on the evidence about which he or she is certain." *United States v. Montague*, 40 F.3d 1251, 1255 (D.C. Cir. 1994). On this record, we find no error in the district court's factual conclusion that IRS attorneys Mr. Fultz and Ms. Lew did not knowingly and falsely represent to the court during litigation in 2006 through 2008 that boxes 17 and 83 were missing from the set of boxes the IRS received from the Records Center. We are unpersuaded by Dr. Lenz's arguments for reversal for three reasons.[1]

*First*, Dr. Lenz argues that two pieces of evidence indicate that Mr. Fultz and Ms. Lew knew the two boxes were not missing. To start, he directs this court's attention to refiling records that state that a "Box #: 17" was refiled at the Records Center in 2013 and a "Box #: 83" was refiled in 2009 and again in 2013. Lenz Opening Br. 33, 38 (citing E.R. 489–492; E.R. 541–553). Dr. Lenz also points to a declaration by IRS attorney Helene R. Newsome stating that Christopher Pinkney, the Acting Director of the Records Center, found boxes 17 and 83 "in their appropriate locations" in the Records Center during a manual check in August 2021, and that the Records Center had "no hard copy record, or [digital record], indicating that Boxes 17 and 83 were ever missing[.]" E.R. 481 (quotation marks omitted); *see* Lenz Opening Br. at 29–30, 45–46.

The district court explained, however, that Dr. Lenz's argument mistakenly conflates the information in the possession of the Records Center *after* the relevant time frame with the facts known to the IRS attorneys *during* the relevant time frame. *Stonehill II*, 2024 WL 4679128, at *4. The Records Center is not part of the IRS, and so the refiling of boxes 17 and 83 by the Records Center after the litigation ended in 2008 does not establish by clear and convincing evidence that the IRS attorneys knew about the location of the two boxes within the Records Center in 2001 or during the litigation in 2006 through 2008. Dr. Lenz also does not meaningfully contest the district court's finding that all of the other record evidence "consistently reflects that the IRS only received 84 boxes [from the Records Center] in 2001, with boxes 17 and 83 being absent." *Id.* at *4 & n.9 (citing E.R. 316 (2003 Lew email); E.R. 326–327 ¶ 6 (2005 Fultz Decl.); E.R. 52–53 ¶ 5 (2007 Fultz Decl.); E.R. 283 (2002 letter from IRS Tax Law Specialist Carroll Field to Mr. Stonehill's attorney)).[2]

---

[1]  The district court stated that fraud on the court could be committed "intentionally, willfully, or recklessly." *Stonehill II*, 2024 WL 4679128, at *4 (citing *Bowie v. Maddox*, 677 F. Supp. 2d 276, 279 (D.D.C. 2010)). On appeal, Dr. Lenz argues only that the IRS attorneys committed the fraud with knowledge. *See* Lenz Opening Br. 33, 38, 40, 42, 44, 49–50. As a result, we need not decide whether such fraud can be committed recklessly.

[2]  The 2007 Fultz declaration and the IRS filings that incorporate this declaration refer to the IRS receiving 82 out of 84 boxes (rather than 84 out of 86 boxes) from the Records Center, with boxes 17 and 83 missing. *See* E.R. 52–53 ¶ 5 (2007 Fultz Decl.); E.R. 59–60 ¶ 9 & n.1 (IRS Statement of Material Facts Not in Genuine Dispute). The remaining record evidence refers consistently to an 86-box set. The government asserts that the reference to an 84-box set was human error. *See* IRS Br. 11–12. Dr. Lenz

Nor has Dr. Lenz persuasively challenged the district court's finding that "[Acting Director Pinkney's] statement that [the Records Center] did not have records of boxes 17 and 83 being lost does not clearly and convincingly show that the boxes were actually never lost, let alone that the IRS knew or should have known they were not lost during the relevant timeframe." *Stonehill II*, 2024 WL 4679128, at *4 n.8 (emphasis omitted). The district court cited an email from Acting Director Pinkney explaining that the Records Center could not conclusively track box records from before 2009, which is when the Records Center had switched from a manual record system to an electronic one. *Id.* (citing E.R. 393–394); *see also* E.R. 478 (Newsome Decl. discussing the record-system change). Dr. Lenz cites no record evidence suggesting otherwise.

*Second*, Dr. Lenz argues that "there is no plausible explanation for why there may have been boxes 17 and 83 after this case was terminated but not in 2001." Lenz Opening Br. 44 (capitalization altered). But as the district court noted, the government explained, with record support, that paralegal Natalie McKinney, who supervised the return of boxes to the Records Center in 2013, created two additional boxes when old boxes fell apart. *See Stonehill II*, 2024 WL 4679128, at *4 (discussing E.R. 381); *see also* E.R. 361 (email discussing Ms. McKinney's involvement in returning the boxes). In a 2014 email exchange with Ms. Lew, Ms. McKinney stated that 84 boxes were obtained from the Records Center in 2001 and that 86 boxes were returned to the Records Center in 2013. E.R. 381. Ms. McKinney explained that some of the original boxes had fallen apart because they were "damaged and overstuffed[.]" E.R. 381. Though these original boxes were salvaged at the request of the Records Center, they could hold only a smaller amount of material, and so "two additional boxes" were needed to physically return all the materials to the Records Center. E.R. 381.

*Third*, Dr. Lenz argues that this email exchange between Ms. Lew and Ms. McKinney is a "Post Factum" attempt "to reconstruct the circumstances surrounding the IRS['s] return" of the boxes to the Records Center several months earlier that was "not [c]redible[.]" Lenz Opening Br. 45 (discussing E.R. 381–382). But the only evidence that Dr. Lenz cites in support of this argument is a chain of emails in which another IRS attorney told Ms. Lew not to contact the Records Center during an investigation of the missing boxes by the Treasury Inspector General for Tax Administration, and instead to let the Treasury Inspector General "pursue the investigation as they saw fit." *Id.* (quoting E.R. 380). Ms. Lew's consultation of an agency attorney in determining how to comply with an investigation, without more, does not establish error in the district court's credibility judgment regarding her emails.

In short, Dr. Lenz has not established that the district court clearly erred or abused its discretion in finding that Dr. Lenz failed to meet his evidentiary burden.

---

does not make any arguments specific to this difference, focusing instead on the consistent two-box discrepancy, *see* Lenz Opening Br. 37–51, and thus we need not address this point. *Cf. Apprio, Inc. v. Zaccari*, 104 F.4th 897, 910 (D.C. Cir. 2024).

6

**B**

Next, Dr. Lenz challenges the district court's denial of his motion to set aside the judgment under Rule 60(b). Lenz Opening Br. 48–51. These arguments also do not succeed.

The district court concluded that the motion, though styled as a Rule 60(b)(6) motion, "sound[s] in 'fraud * * * misrepresentation, or misconduct by an opposing party[,]'" and so falls under the domain of Rule 60(b)(3). *Stonehill II*, 2024 WL 4679128, at *3 (quoting FED. R. CIV. P. 60(b)(3)); *see also Baltia Air Lines*, 98 F.3d at 642 (holding that parties "cannot circumvent the limitations" on filing a motion for relief under Rule 60(b)(3) "by relying on the catchall provision of 60(b)(6)"). The court denied the motion as time-barred, citing Rule 60(c)(1)'s one-year filing requirement for motions under Rule 60(b)(3). *Stonehill II*, 2024 WL 4679128, at *3.

Dr. Lenz first argues that the district court misconstrued his motion. *See* Lenz Opening Br. 48–50. Dr. Lenz contends that his Rule 60(b)(6) motion is actually a motion to set aside the judgment for the kind of fraud that would justify the use of the court's equitable powers, not a Rule 60(b)(3) motion. *Id.* If that is the case, then the argument fails because Dr. Lenz has not demonstrated fraud warranting the court's exercise of its inherent power, *see* Section A, *supra*.

Dr. Lenz asserts, in the alternative, that a Rule 60(b)(3) motion would not be time-barred, because "the last production of records" in a (separate) FOIA case that revealed the alleged fraud on the court occurred less than a year before his motion was filed. Lenz Opening Br. 51. But the time limit for filing a Rule 60(b)(3) motion starts to run upon the filing of the district court judgment, not the discovery of evidence by the movant. Specifically, a Rule 60(b)(3) motion must be made "no more than a year *after the entry of the judgment* or order or the date of the proceeding." FED. R. CIV. P. 60(c)(1) (emphasis added). The final judgment that Dr. Lenz seeks to set aside was entered by the district court in 2008, which was sixteen years before Dr. Lenz filed his motion for relief under Rule 60(b) in 2024. *See* E.R. 91 (judgment); E.R. 194 (motion for relief).

\* \* \*

For the foregoing reasons, we affirm the judgment of the district court.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41.

**<u>Per Curiam</u>**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY: /s/
Daniel J. Reidy
Deputy Clerk